September 13, 2013

Hon. Kandis A. Westmore
Magistrate Judge
United States District Court
Northern District of California, Oakland Courthouse
1301 Clay Street
Oakland, California 94612

Re: **Viteri-Butler v. UC, Hastings College of the Law, et al.**
 USDC, Northern District Case No. 3:12-cv-02651-PJH

Dear Magistrate Judge Westmore:

Pursuant to Judge Hamilton's Order dated August 15, 2013, and your Honor's standing order, Plaintiff Sara Viteri-Butler ("Plaintiff") and Defendant University of California Hastings College of the Law ("the College") hereby submit this Joint Letter in response to Plaintiff's Motion to Compel Further Responses and Production of Documents, filed by Plaintiff on August 14, 2013 [Doc. No. 48]

## I. Summary of The Case

**The College's Summary of the Case:** At the start of the fall 2011 semester, the College announced a Strategic Plan to reduce the size of the J.D. class by 25%. As a result of the anticipated related reduction in tuition revenues, the College determined reduced its budget for payroll costs and consequently, a total of ten (10) staff positions (then occupied by existing employees) were identified for elimination. The College selected the Financial Aid Assistant position occupied by Plaintiff, as one of the ten (10) positions for elimination. Plaintiff's claims against the College allege age, race and disability motivation by Hastings. The College denies the allegations.

**Plaintiff's Summary of the Case:** This is an age, race, and disability discrimination case brought by a long-term (20+ years) Financial Aid Assistant at Defendant University of California Hastings College of Law. Plaintiff, Sara Viteri Butler was terminated without prior notice in March of 2012, shortly after Defendant AFSCME successfully unionized the last remaining University of California Campus. as part of a so-called reduction-in-force ("RIF") which disproportionally impacted older, disabled, Hispanic workers.

## II. Background of The Discovery Dispute

On September 19, 2012, Plaintiff served a Request for Production of Documents ("RFP"), Set One. On October 22, 2012, the College served written responses to Plaintiff's RFP Set One. Thereafter, on July 3, 2013, the College served amended responses to Plaintiff's RFP Set One for Request No.'s 16 and 18.

a) **Document Production**

**Plaintiff's Position:** Plaintiff asserts that the College produced no documents responsive to Plaintiff's requests for seven (7) months, producing its first documents in late March, 2013. Despite a months-long meet and confer process where Plaintiff wrote numerous letters to obtain Rule 34 compliant responses, Defendant never disclosed the following allegation until the eve of the filing of a prior version of this joint letter on September 11, 2013:

> Notwithstanding that objections were made to certain searches for the period of time prior to January 1, 2012 on the grounds of lack of relevance, all of the searches that were performed by the College included the period before January 1, 2012, as well as after and full production was made.

Prior to September 11, 2013, Defendant Hastings refused to search for responsive documents to Request No. 6, and throughout the entire meet and confer process stood by its Rule 34 response: " The College has produced all documents for the period January 1, 2012 to present. The College will not produce older documents". (Response to Req. No. 6). This 11th hour change in tactic has wasted the parties' time, multiplied the proceedings, and should be sanctioned. Furthermore, the assertion is disingenuous, as Hastings has not identified the sources of Electronically Stored Information it has searched and what it still refuses to search. Defendant is attempting to cause confusion as its Response to Request No. 6 has always been and remains to this day that no pre-2012 documents would be produced. Plaintiff has asked Defendant to supplement that response and Defendant has refused. Defendant has never claimed prior to September 11, 2012 that it would produce any documents responsive to Request No. 6, and still has not done so. Defendant has continued to argue through multiple versions of this letter that it has produced anything responsive to Request No. 6 before 2012. Combined with its refusal to identify any ESI systems or what has been preserved for litigation, Defendant must provide a supplemental response and production.

**The College's Position:** The College asserts that it has timely searched for and produced all relevant documents that pertain to this case, identified as Bates Stamp numbers HAST0001 to HAST2747. The College produced 172 documents as part of its initial disclosures. Within three months of service of the propounded request for documents, the College produced a second batch of documents consisting of an additional 696 pages of documents. The College then produced three more batches of documents over the next three months, which consisted of an additional 1709 pages of documents. Notwithstanding that objections were made to certain searches for the period of time prior to January 1, 2012 on the grounds of lack of relevance, all of the searches that were performed by the College included the period before January 1, 2012, as well as after and full production was made. The documents produced to Plaintiff on their face show that the documents for years prior to January 1, 2012 were in fact produced. In recent meet and confer, counsel for Plaintiff nevertheless asserted that pre-January 2012 searches were not conducted. Counsel for the College responded promptly to certify in writing to

the contrary and to state the Amended Discovery Responses will be forthcoming to that effect.

### b) Privilege Log

Beginning on March 8, 2013, counsel for Plaintiff and the College engaged in communications concerning the RFP Set One and other discovery requests by Plaintiff. One of Plaintiff's complaints was the lack of a privilege log. On April 8, 2013, the College produced a privacy/privilege log to Plaintiff.

**Plaintiff's Position:** Plaintiff contends that this "privilege log" is wholly inadequate as it does not identify by number of documents, the dates, specifics as to the privilege asserted, nor essential foundational facts which would enable a meaningful meet and confer process. Defendant continues to group documents by 2-year time frames and unidentified recipients and authors. A bates-numbered privilege log is customary and appropriate, identifying each document withheld.

**The College's Position:** The College has modified its privilege log to comply with your Honor's standing order. See the College's modified privilege log attached as Exhibit A.

### c) Proposed Stipulated Protective Order

The College agreed to produce certain additional private documents upon the entry of a stipulated protective order between the parties. A stipulated protective order has now been negotiated between the parties.

**Plaintiff's Position:** Defendant delayed an entire month after Plaintiff provided as the Northern District Model for Standard Litigation.. Defendant College refused to sign the Northern District Model for Standard Litigation despite the fact that both Plaintiff and Defendant Union have agreed to do so. This issue has been resolved by the parties, as Defendant will now sign the stipulated protective order provided by Plaintiff more than a month ago. As with the 11th hour change on pre-2012 documents, this has been a delaying tactic as to which Defendant should be admonished.

**The College's Position:** The College proposed a several word modification to the Model Protective Order to deal with third party medical records and this week, the parties have reached a solution.

### d) Certification Of Searches and Productions By The College

**The College's Position:** The College has certified in writing the document searches and productions.

**Plaintiff's Position**: Defendant has still not identified and refuses to identify the electronically stored information systems it has searched to identify potentially responsive documents. Plaintiff requests that the Court order Defendant to specify what information systems as to which it has placed a litigation hold and what information systems it has searched for documents responsive to Plaintiff's Rule 34 requests, as

required under the Court's Guidelines for the Discovery of Electronically Stored Information. Combined with Defendant's 11th hour change in position that it actually has searched for some pre-2012 documents, Defendant should be ordered to identify what information systems have a litigation hold, what information systems have been searched and what information systems have not been searched.

### e) Meet and Confer Efforts

Counsel for Plaintiff and counsel for the College have met and conferred in-person and by telephone (and by letter) prior to the filing of this Joint Letter.

### III. Summary of The Discovery Disputes That Remain

Below is a summary of the unresolved discovery disputes:

#### 1. Request for Production No. 2

Plaintiff's Request No. 2: "*Any and all DOCUMENTS that refer or relate to the March 2012 reduction in force at U.C. Hastings.*"

The College's Response to Request No. 2: "Objections: Ambiguous; overbroad and/or not stated with reasonable particularity; unduly burdensome. Without waiving objections, the College responds as follows: The College has produced documents responsive to this request as a part of its Initial Disclosures, identified as HAST0001-HAST0172. The College will produce all documents related to the elimination of the Financial Aid Assistant position. The College will produce the documents that identify all other positions eliminated or reduced, and the affected employees. The College will not search for or produce any other documents."

**Plaintiff's Position**: This response is clearly evasive and inadequate. The request seeks documents that relate to the RIF, not just Plaintiff's position and not just a list of positions eliminated. This request seeks the communications of the people involved in the RIF, the planning documents, the worksheets, the memoranda, the meeting notes. Defendant's response does not fairly meet the substance of the request, and it has not articulated any burden, let alone an undue burden.

Indeed, large corporate entities, public or private, such as UC Hastings College of Law that has received a lengthy or complex document request should be able to demonstrate a procedure for systematic compliance with the document request. *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 552 (N.D.Cal. 1987). "[A reasonable] inquiry would [require], at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents . . . . . potentially possessing responsive information, and to account for the collection and subsequent production of the information to plaintiffs." *Id*. at 556. By means of an organized system of compliance, the recipient can demonstrate that it conducted a reasonable inquiry by providing plaintiff with declarations under oath detailing the nature of recipient's efforts to locate responsive documents, addressing each inquiry on a request-by-request basis. *A. Farber and*

*Partners, Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal. 2006). Defendant has not done so here, and has attempted to avoid having to do so by unilaterally limiting the response to Plaintiff's position and a list of persons terminated. This conduct violates both the express provisions of Fed. R. Civ. P. 34, but also the case law interpreting it.

Plaintiff has made multiple attempts to resolve Defendant's non-compliance informally. Plaintiff sent meet and confer correspondence concerning the objections and the response on March 8, 2013. (Dkt # 48-2, Patten Decl., Exh. "D"). Defendant did not respond substantively. (*Id.* Exh. "E"). Plaintiff sent further correspondence attempting to resolve Defendant's unilateral limitation on this request. (*Id.* Exh. "G"). Defendant did not respond substantively until June 17, 2013 (*Id*, Exh. "I"). When it did respond, it simply restated its position that only the Financial Aid Assistant position would be produced and that it would not search for other documents. *Id.* Plaintiff met and conferred telephonically, but the attempt did not result in any change in position on the part of Defendant. (*Id.*, ¶ 19, Exhibit "O").

This request is very straightforward; it seeks documents related to the RIF generally. These documents will provide circumstantial evidence of improper or illegal motive on the part of the decision makers. The documents will demonstrate whether the RIF was made according to a reasoned analysis of the reduced workload and/or funding caused by the reduced incoming class size or whether it was a blank check for the University to retaliate or terminate the most senior and most highly-compensated staff in favor of lesser-paid staff based upon Plaintiff's protected classes. Federal Courts have long held that "plaintiffs in reduction-in-force cases bear no greater burden of proof than other ADEA plaintiffs" (*Oxman v. WLS-TV*, 12 F.3d 652, 657 (7th Cir. 1993)); and that a discrimination claim "does not require the plaintiff to prove that the reorganization as a whole was pretextual." (*Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995)).

Several distinct fact patterns in RIF cases have been held to support a finding of pretext, including the pattern here: an employee whose duties were not eliminated has questioned why he or she was not chosen as the employee (or one of the employees) to continue handling those duties. *See, e.g., Mouchette v. Board of Education*, 217 Cal. App. 3d 303, 314 (1990); *Maschka v. Genuine Parts Co.*, 122 F.3d 566, 569 (8th Cir. 1997). Courts have frequently cited, as evidence of pretext, the fact that the employer gave preferential treatment to employees who were not in a protected category regarding positions open at or around the time of the RIF. As the Second Circuit has held in *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2nd Cir. 1995):

> A finder of fact is permitted to draw an inference of age discrimination from evidence that, in implementing such a reorganization or reduction, the employer has located new positions for younger, but not older, employees.

*See also Miller v. Fairchild Ind., Inc.*, 885 F.2d 498, 506 (9th Cir. 1989). Thus, the documents requested by Plaintiff in her First Set of Fed. R. Civ. P. Rule 34 Requests are precisely the types of documents used by plaintiffs in RIF cases for decades to demonstrate circumstantial evidence of discriminatory intent.

Furthermore, this request seeks statistical evidence concerning the RIF and those selected for termination, which is admissible both as part of Plaintiff's *prima facie* case and also as proof of pretext. The correspondence concerning the RIF are directly relevant to the reasons for selecting Plaintiff, other workers over 40, other Hispanics, and others with disabilities for termination.

Defendant has offered no substantial justification for refusing to produce documents related to the RIF outside of the decision to lay off Plaintiff. Accordingly, Defendant should be sanctioned for failing to provide a response compliant with Fed. R. Civ. P. Rule 34 and failing to produce all responsive documents and should be ordered to produce the evidence relied upon by the Court in the *Diaz* and *Coleman* cases, *supra*. Hastings has proffered no underlying factual basis for its claim of $15,000 in alleged expenses, and prior to September, 2013 has never articulated this as the basis of its undue burden objection. In any event, the burden is not undue and there is no basis for cost shifting, as Defendant has refused to identify the information systems searched and not searched despite months of meet and confer efforts. Defendant has never proffered the language set forth in its response below before 4:30 p.m. September 13, 2013 as the basis for its undue burden objection, despite multiple opportunities to do so through the meet and confer process.

<u>The College's Production of Documents Re: Request No.2:</u>

- The College produced the following documentation concerning the Reduction-In-Force ("RIF"): the Strategic Plan; a list of all individuals and the positions eliminated and/or reduced; the demographical information of each individual affected by the RIF; the communications between the College and the Union surrounding the RIF; and the documentation of the College's decision for elimination of the position of Financial Aid Assistant formerly held by Plaintiff; and other related documents. [See for example, Bates Stamp documents HAST0001-0172; 0175-0178; 0808-0869; 2103-2106; 2107-2259; 2260-2739]

- The College also produced the emails of the decision-makers and Human Resources relating to the selection of Plaintiff's position for elimination; all personnel files of Plaintiff; and the documents relating to internal review hearings with Plaintiff and those other employees who challenged the RIF. [See for example, Bates Stamp documents HAST0141-0144; 0808-0869; 2107-2170; 2196-2239; 2240-2253; 2254-2259]

- The College stated in writing that, upon the entry of an appropriate protective order, the College will provide Plaintiff with the names and residential addresses of those employees who were affected by the RIF position eliminations and reductions; and that it would search the personnel files of each of the other positions in the Financial Aid Department and produce those documents showing the special skills, knowledge or abilities of the employee, if any such documents

exist. These documents will be produced promptly when the protective order is entered.

**The College's Position:**
The College advised Plaintiff that it would be extremely burdensome and costly for the College to search for each and every document of the entire College that in any manner "relates to" anything and everything about each and every employee of the College who was affected by the RIF, because the request calls for every possible document that mentions anything about the RIF. There are over 200 employees at the College and a search for such documents, including electronic correspondence, would entail searching every possible file, e-mail, or computer that exists at the College, to locate the requested documents. Such a search would take a large amount of time and man-power to complete, and would be unlikely to result in any further relevant documents. I would conservatively estimate this search costing upwards of $15,000 to complete, including Hastings staff time, paralegal time, attorney time. I estimate this cost based on the knowledge of the time taken to conduct the searches and processing of the document demands by Plaintiff and the anticipated need to review and comb thru an extensive set of hard file and soft file, and emails, and then redact for privacy and privilege.

2. **Request for Production No. 6**

Plaintiff's Request No. 6: *"Any and all DOCUMENTS that refer or relate to the Financial Aid Assistant Position at Hastings."*

The College's Response to Request No. 6: "Objections: Ambiguous; overbroad and/or not stated with reasonable particularity; unduly burdensome. Without waiving objections, the College responds as follows: The College has produced all documents for the period January 1, 2012 to the present. The College will not produce older documents."

**Plaintiff's Position:** Defendant unilaterally limited its response to January, 2012 to present; thereby avoiding having to produce any documentation related to the Dean's direction to Shauna Marshall to conduct a comprehensive review and select positions or people for termination in 2011:

> Q. What was the criteria that was used for the layoff?
> . . .
> MR. SMITH: Q. Do you understand my question?
> A. I'm not sure I understand the question. But I will say that we developed
> a Strategic Plan in response to the profound changes in the marketplace
> for legal education. Part of that Strategic Plan involved a radical reduction
> in the class size, totaling approximately 240 students; or between 20 and
> 25 percent of the typical enrollment of UC Hastings. The reduction in
> class size necessitated a reduction in the work force. As Chancellor and
> Dean, I directed my direct reports, the individuals who constitute the
> cabinet, and come to key issues meetings to reduce the payroll in the

> respective divisions. I set numerical targets for the goals and advised them
> that they should proceed in accordance with the Strategic Plan.
> Q. You said you "advised them." Who did you advise?
> A. Members of the cabinet. The individuals who come to the key issues
> meetings.
> Q. The members of the cabinet select the positions that would be
> eliminated?
> A. The members of the cabinet then made recommendations to me, and I
> made the final decisions as to which positions would be closed.

(Dkt #48-2, Deposition of Dean Wu, Exh. "P" to Patten Decl., 14:3-15:10). The "Strategic Plan" referenced by the Dean is dated August, 2011. (*Id.*, Exh. "Q"). Thus, any documents which relate to Plaintiff's position from that time period would obviously be relevant to determine what process was used to implement the "Strategic Plan" with respect to Plaintiff's position. For some undisclosed reason, the University refuses to produce any documents in this regard prior to January, 2012. The only reasonable conclusion is that documents exist which show that Plaintiff was targeted for a reason other than that proffered by Defendant. Defendant's 11th hour claim that it has searched for pre-2012 documents is not borne out by the record, and is belied by the refusal to identify ESI systems searched and not searched.

The College's Production of Documents Re: Request No.6:

- The College produced Plaintiff's personnel files; the job description for the Financial Aid Assistant position; and all other responsive documents concerning the elimination of the Financial Aid Assistant position. [See for example, Bates Stamp documents HAST0001-0172; 0173-0174; 0175-0178; 0182-0703; 0808-0869]
- The College also produced the documents relating to the internal review hearings for Plaintiff and those other employees who challenged the RIF. [See for example, Bates Stamp documents HAST0141-0144; 0859-0869; 2107-2170]
- Notwithstanding that objections were made to certain searches for the period of time prior to January 1, 2012 on the grounds of lack of relevance, all of the searches that were performed included the period before January 1, 2012, as well as after.

**The College's Position**:
As indicated above, the College already produced all documentation of the College's decision for elimination of the position of Financial Aid Assistant formerly held by Plaintiff, regardless of dates. There are no other documents that are responsive to Plaintiff's request and Plaintiff fails to reasonably particularize what other documents that she seeks to obtain.

3. **Request for Production No. 15**

Plaintiff's Request No. 15: *"Any and all DOCUMENTS referring or RELATING TO any efforts made by YOU to assure that PLAINTIFF had the opportunity to be transferred to another position."*

The College's Response to Request No. 15: "Objections: Ambiguous; not relevant to any claim or defense. Without waiving objections, the College responds as follows: The College will search for and produce any documents for year 2012. The College will not search for older documents."

**Plaintiff's Position**: Defendant objected and stated that it would only search for and produce documents for the year 2012. (Dkt# 48-2, Patten Decl., Ex. "B"). Again, given the time frame of Dean Wu's Strategic Plan (August, 2011), the Union's bargaining over approval for layoffs (July, 2011), the temporal scope of these requests cannot under any circumstances be limited to 2012 on the grounds of relevance. Defendant has failed to articulate any burden, let alone any undue burden to support an undue burden objection. Therefore, Defendant should be ordered to produce responsive documents for 2007 to present.

The College's Production of Documents Re: Request No.15:

- The College produced Plaintiff's personnel files; all emails between Plaintiff and the Director of Financial Aid, Linda Bisesi, and Human Resources; and all other responsive documents concerning the elimination of the Financial Aid Assistant position. [See for example, Bates Stamp documents HAST0083-0172; 0182-0703; 0001-0172; 0175-0178; 0808-0869]
- The College produced the documents concerning the RIF that are identified in no. 2 above and this includes all job vacancy information.
- The College also produced the emails of the decision-makers relating to the selection of Plaintiff's position for elimination. [See for example, Bates Stamp documents HAST0808-0869; 2240-2253]
- All of the searches that were performed included the period before January 1, 2012, as well as after.

**The College's Position**:
The College has produced all non-privileged documents responsive to this request.

4. **Request for Production No. 16**

Plaintiff's Request No. 16: *"Any and all DOCUMENTS referring or RELATING TO YOUR Director of Personnel providing records and reports to the Dean to ensure compliance with YOUR layoff, furlough and reduction in time policy."*

The College's Response to Request No. 16: "Objections: Ambiguous; overbroad and/or not stated with reasonable particularity. Upon further clarification from Plaintiff, the College will further respond."

The College's Amended Response to Request No. 16: "Objections: Ambiguous; overbroad and/or not stated with reasonable particularity. Objection: The request calls for production of documents containing attorney-client communications and/or attorney work-product. Without waiving objections, the College responds as follows: The College has produced all non-privileged documents referring or relating to the non-privileged communications with the Dean."

**Plaintiff's Position**: Request No. 16 seeks documents relating to the Director of Personnel providing records and reports to Dean Wu to ensure compliance with the layoff, furlough, and reduction in time policy. (Dkt# 48-2 Patten Decl., Ex. "A"). Defendant initially objected and did not respond (Patten Decl., Exh. "B"). On July 3, 2013 Defendant supplemented, limiting the response to "The College has produced all non-privileged documents referring or relating to the non-privileged communications with the Dean." The response is unintelligible, no privilege log was produced, and Defendant refused to meet and confer telephonically concerning this response. (*Id.*, Exh. "C"). There can be no privilege between the Director of Personnel and the Dean. Neither acted as an attorney in a representative capacity. Furthermore, no privilege log was produced despite demand therefore.

The College's Production of Documents Re: Request No.16:

- The College produced the non-privileged communications between the Director of Human Resources and the Chancellor and Dean. [See for example, Bates Stamp documents HAST0857-0858; 2171-2195]

- The College did not produce attorney-client privileged communications with the Chancellor and Dean that include Hastings' General Counsel and/or its outside counsel concerning the RIF or the litigation of Plaintiff's case, or attorney work-product. [See Hastings' Privilege Log]

**The College's Position**: The College has produced all non-privileged documents responsive to this request.

5. **Request for Production No. 18**

Plaintiff's Request No. 18: *"Any and all DOCUMENTS referring, reflecting, or RELATED TO special skills, knowledge, or abilities of employees that were not laid off from YOUR financial aid office."*

The College's Response to Request No. 18: "Objections: Ambiguous; overbroad and/or not stated with reasonable particularity, unduly burdensome. Without waiving objections, the College responds as follows: The College will produce the job descriptions of each of the positions in the Financial Aid Department. The College will not search for or produce other documents."

<u>The College's Amended Response to Request No. 18</u>:  "Objections: Ambiguous; overbroad and/or not stated with reasonable particularity, unduly burdensome.  Without waiving objections, the College responds as follows:  In addition to the job descriptions of each of the positions in the Financial Aid Department already produced by the College, the College will search the personnel files of each of the other positions in the Financial Aid Department and produce the documents showing the special skills, knowledge or abilities of the employee, if any such documents exist.  The College will not search for or produce other documents."

**Plaintiff's Position**:  Request No. 18 seeks documents that identify any special skills of those persons who were not affected by the RIF in the Financial Aid Office. (Dkt# 48-2, Patten Decl., Ex. "A"). On July 3, 2013, Defendant provided a supplemental response that indicated that it would search its records for such special skills.  Defendant has provided no further production nor response.  (*Id.*,  Exh. "C").

<u>The College's Production of Documents Re: Request No.18:</u>

- The College produced the job descriptions of each of the positions in the Financial Aid Department. [See Bates Stamp documents HAST0156; 0173-0174; 0802-0807]

**The College's Position**:  As explained above, the College produced the job descriptions of each of the positions in the Financial Aid Department.  The College has completed its search for the other documents responsive to this request.  Upon the entry of an appropriate protective order, and with proper redaction for privacy purposes, the College will produce these documents also.

**RESPECTFULLY JOINTLY SUBMITTED,**

        **SMITH PATTEN**

        */s/  Dow W. Patten*
        Dow Patten, Esq.
        Smith Patten
        Attorney for Plaintiff Sara Viteri-Butler

        **VARTAIN LAW GROUP**

        _____
        Michael J. Vartain, Esq.
        Vartain Law Group
        Attorney for Defendant University of
        California, Hastings College of the Law