United States District Court
Northern District of California

SARA VITERI-BUTLER,

        Plaintiff,

   v.

UNIVERSITY OF CALIFORNIA,
HASTINGS COLLEGE OF THE LAW,

        Defendants.

Case No.: CV 12-02651 PJH (KAW)

ORDER REGARDING SEPTEMBER 16,
2013 JOINT DISCOVERY LETTER

On August 15, 2013, this matter was referred to the undersigned for discovery purposes. (Order of Reference; Dkt. No. 49). On September 16, 2013, the parties filed their joint discovery letter. (Joint Ltr.; Dkt. No. 52). Plaintiff asserts that the College's responses to her requests for production are insufficient. (*Id.* at 2). The College challenges those requests as ambiguous, overbroad and/or not stated with reasonable particularity, and unduly burdensome. (*Id.* at 4, 7, 9, 10, 11). The College also objects to certain requests for discovery as requiring disclosure of attorney work-product or privileged information. (*Id.* at 10).

Pursuant to Civil Local Rule 7-1(b), this matter is deemed suitable for disposition without hearing. Having reviewed the papers filed by the parties, the court orders the College to supplement its responses to Plaintiff's requests for production as set forth below.

## I.    BACKGROUND

On May 23, 2012, Sara Viteri-Butler ("Plaintiff") filed a complaint against the University of California, Hastings College of the Law ("College") and SEIU Local 3299 ("Union"). (Compl.; Dkt. No. 1). In her complaint, Plaintiff alleges retaliation, breach of duty of fair representation, and age, race, and disability discrimination. *(Id.)* The College hired Plaintiff in 1984. (*Id.* ¶ 9). On March 8, 2012, the College notified Plaintiff that she was being laid off

because her position, Financial Aid Assistant, had been eliminated. (*Id.* ¶ 24). Plaintiff contacted her union representative that day, who indicated that the Union had no prior knowledge about which employees were being laid off and that it would look into the matter. (*Id.* ¶ 25). The elimination of Plaintiff's position coincided with the College's reduction-in-force ("RIF"). (Joint Ltr. at 1). Plaintiff asserts that the RIF "disproportionally [*sic*] impacted older, disabled, Hispanic workers." *(Id.)*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The information sought "need not be admissible at the trial" so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Federal Rule of Civil Procedure 34(a) provides:

> A party may serve on any other party a request within the scope of Rule 26(b):
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
> (A) any designated documents or electronically stored information-- including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form . . . .

Such request "must describe with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 26(b)(1)(A).

## III. DISCUSSION

**A. Document Production**

1. Request for Production No. 2

Plaintiff's Request for Production No. 2 is as follows: "*Any and all DOCUMENTS that refer or relate to the March 2012 reduction in force at U.C. Hastings.*" (Joint Ltr. at 4) (emphasis and capitalization in original).

2

The College responded to this request, objecting on the grounds that the request was ambiguous, overbroad and/or not stated with reasonable particularity, and unduly burdensome. (*Id.* at 4, 7). In its response, the College also stated that it had produced documents responsive to this request as part of its initial disclosures. (*Id.* at 4). In addition, the College indicated that it would produce documents related to the elimination of the Financial Aid Assistant position and documents that identified all other positions eliminated or reduced and the affected employees. (*Id.* at 6). The College also stated that it would provide Plaintiff with the names and residential address of employees affected by the RIF; search the personnel files of each of the other positions in the Financial Aid Department; and produce existing documents showing special skills, knowledge or abilities of the employee upon the entry of an appropriate protective order. (*Id.* at 6-7). However, the College stated that it would not search for or produce any other documents. (*Id.* at 4). The College maintains that it would be extremely burdensome and costly[1] "to search for each and every document of the entire College that in any manner 'relates to' anything and everything about each and every [of the 200] employee[s] of the College who w[ere] affected by the RIF, because the request calls for every possible document that mentions anything about the RIF." (*Id.* at 7).

Plaintiff indicates that she seeks documents that relate to the RIF, not just Plaintiff's position and not just a list of positions eliminated. (*Id.* at 4). Plaintiff also seeks "the communications of the people involved in the RIF, the planning documents, the worksheets, the memoranda, [and] the meeting notes." *(Id.)* In addition, Plaintiff seeks "statistical evidence concerning the RIF and those selected for termination." *(Id.)*

The court finds that Plaintiff's request is not ambiguous, overbroad and/or not stated with reasonable particularity. Plaintiff seeks documents, including communications, planning documents, worksheets, memoranda, and meeting notes, that relate to the RIF. (*Id.* at 4). The RIF is an adequately limited term by which the College can search its systems, gather discoverable materials, and transmit them to Plaintiff. The RIF also concerns a discrete time

---

[1] The College's conservative estimate is that search costs would exceed $15,000. *See* Joint Ltr. at 7.

period, which itself helps define the scope of Plaintiff's request and which helps the College tailor its search. Insofar as the College considers Plaintiff's request extremely burdensome and costly in light of the volume of material to be searched, the District's Guidelines for the Discovery of Electronically Stored Information contain useful information for how the College may adequately search its systems while mitigating expenses. *See, e.g.,* Guideline 2.02.

Accordingly, the College shall supplement its responses to Plaintiff's Request for Production No. 2. The College shall search and produce relevant materials that date back at least to September 2010. This date is appropriate based on entries in the College's privilege log, which show that the RIF was a topic of discussion at the College at least as early as September 2010. *See* Dkt. No. 56. As for Plaintiff's request for statistical evidence, the College shall provide any such information in its possession, custody, or control, and if such information is unavailable, provide any related data or data compilations. *See* FED. R. CIV. P. 34(a)(1)(A). Any search or production of that information shall also cover materials that date back at least to September 2010, for the same reasons indicated above. Any production contingent on the entry of a stipulated protective order, discussed *infra* Part III.C, shall also cover materials within that same timeframe.

2. Request for Production No. 6

Plaintiff's Request for Production No. 6 is as follows: "*Any and all DOCUMENTS that refer or relate to the Financial Aid Position at Hastings.*" (*Id.* at 7) (emphasis and capitalization in original).

The College responded by objecting to the request on the grounds that it was ambiguous, overbroad and/or not stated with reasonable particularity, and unduly burdensome. (*Id.* at 7). In its response, the College indicated it had produced all documents for the period of January 1, 2012 to the present but that it would not produce older documents. *(Id.)* The College now maintains that it has produced all documentation[2] of the College's decision to eliminate Plaintiff's

---

[2] This includes documentation concerning the RIF (i.e., the Strategic Plan, individuals and positions eliminated, demographic information for those individuals, communications between the College and the Union, documentation of the decision to eliminate Plaintiff's position, and other related documents); emails of decision-makers and human resources relating to the selection

4

1  position "regardless of dates[;]" that there are no other documents that are responsive to Plaintiff's
2  request; and that "[n]otwithstanding that objections were made to certain searches for the period
3  of time prior to January 1, 2012 on the grounds of lack of relevance, all of the searches that were
4  performed included the period before January 1, 2012 as well as after."[3] *(Id.)*

5  Plaintiff asserts that the College limited its response to documents from January 2012 to
6  the present. *(Id.)* Plaintiff maintains that the College has done so to avoid the production of
7  documentation related to "the Dean's direction to Shauna Marshall to conduct a comprehensive
8  review and select positions or people for termination in 2011." (*Id.* at 7, 8). Plaintiff highlights
9  that the Strategic Plan, which the Dean referenced during his deposition, is dated August 2011.
10 (*Id.* at 8 (citing Patten Decl., Ex. P – Dean Wu Dep. 14:3-15:10, Ex. Q – UC Hastings 2011: At A
11 Crossroads; Dkt. No. 48-3)). On this basis, Plaintiff asserts that any documents relating to
12 Plaintiff's position from that time period would obviously be relevant to determine how the
13 College implemented the Strategic Plan with respect to Plaintiff's position. (Joint Ltr. at 8).

14 So explained, Plaintiff has appropriately clarified the parameters of her Request for
15 Production No. 6. The court also finds that the request is not unduly burdensome. The College
16 can mitigate that burden by following the District's Guidelines for the Discovery of Electronically
17 Stored Information. *See, e.g.,* Guideline 2.02.

18 Accordingly, the College shall supplement its response to Plaintiff's Request for
19 Production No. 6. The College shall search and produce any relevant documents that date back to
20 at least September 2010. This date is appropriate given that the College's privilege log indicates
21 discoverable information may date back to at least September 2010. *See* Dkt. No. 56.

---

23 of Plaintiff's position as one to eliminate, Plaintiff's personnel files, and documents relating to
24 internal review hearings with Plaintiff and other employees who challenged the RIF. Joint Ltr. at 6.

26 [3] Plaintiff also takes issue with this response. *See id.* at 2. Plaintiff states that the College's position has, until September 11, 2013, been: "The College has produced all documents for the period January 1, 2012 to present. The College will not produce older documents." *Id.* Plaintiff asserts the College's response is disingenuous, as the College has not identified the sources of electronically stored information it has searched and what it still refuses to search. *Id.*

United States District Court
Northern District of California

3. Request for Production No. 15

Plaintiff's Request for Production No. 15 is as follows: "*Any and all DOCUMENTS referring or RELATING TO any efforts made by YOU to assure that PLAINTIFF had the opportunity to be transferred to another position.*" (*Id.* at 9) (emphasis and capitalization in original).

The College responded to this request, objecting on the grounds that it was ambiguous and not relevant to any claim or defense. (*Id.*) In its response, the College indicated that it would search for and produce any documents for 2012, but that it would not search for older documents. (*Id.*) Yet, the College maintains that it has produced all non-privileged documents responsive to this request. (*Id.*)

Plaintiff specifically seeks production of documents from 2007 to the present, which pre-date the College's January 1, 2012 cut-off. (*Id.*) Plaintiff asserts that these documents are relevant given the time frame of Dean Wu's Strategic Plan (August 2011) and the Union's bargaining over approval for layoffs (July 2011). (*Id.*)

The information Plaintiff seeks in this request is relevant and not ambiguous. At a minimum, such information may reveal the circumstances surrounding Plaintiff's lay off, including whether Plaintiff was laid off despite the possibility of a transfer to another position to avoid a lay off or whether other employees were transferred to avoid the layoff of less skilled employees. Plaintiff's request is also straightforward. She seeks documents concerning the College's efforts to provide Plaintiff with an opportunity to transfer to another position.

Accordingly, the College shall supplement its response to Plaintiff's Request for Production No. 15. The College shall search for and produce relevant documents that date back to at least September 2010. As Plaintiff does not offer any support for her request for documents dating back to 2007, *see* Joint Ltr. at 9, the court limits her request to documents that date back to September 2010, which is appropriate in light of the entries in the College's privilege log. *See* Dkt. No. 56.

//

//

4. Request for Production No. 16

Plaintiff's Request for Production No. 16 is as follows: "*Any and all DOCUMENTS referring or RELATING TO YOUR Director of Personnel providing records and reports to the Dean to ensure compliance with YOUR layoff, furlough and reduction in time policy.*" (Joint Ltr. at 9) (emphasis and capitalization in original).

The College responded to this request, objecting on the grounds that it was ambiguous, overbroad and/or not stated with reasonable particularity. *(Id.)* The College also indicated that it would supplement its response upon additional clarification from Plaintiff. *(Id.)* In its supplemental response, the College objected on the grounds that the request was ambiguous, overbroad and/or not stated with reasonable particularity, and called for production of documents containing privileged material or attorney work-product. *(Id.)* The College also indicated that it had produced all non-privileged documents referring to or relating to the non-privileged communications with the Dean. *(Id.)* The College still maintains that it has produced all non-privileged documents responsive to this request. *(Id.)*

Plaintiff asserts that the College's privilege log is inadequate, that the College has refused to meet and confer telephonically, and that there can be no privilege between the Director of Personnel and the Dean, as neither acted as an attorney in a representative capacity. *(Id.)* The court discusses the overall adequacy of the privilege log *infra* Part III.B. To resolve the specific issues concerning the privilege log as it affects Plaintiff's Request for Production No. 16, the court notes that none of the entries in the privilege log reference materials "referring or relating to the Director of Personnel providing records and reports to the Dean to ensure compliance with the College's layoff, furlough and reduction in time policy." (*See* Privilege Log at 1, 2, 3, 4). Moreover, to the extent that the College would suggest that this information is subsumed within the 12 categories itemized in the four-page privilege log, the privilege log does not contain sufficient detail to support such a finding. *See id.* The categories itemized in the privilege log are as follows:

> 1. Electronic Correspondence and Correspondence from Hastings' General Counsel Elise K. Traynum, Esq. and/or one or more Senior Management Group employees of Hastings to Hastings' outside law firm Meyers Nave and/or Wiley Price & Radulovich[;]

7

2. Electronic Correspondence and Correspondence from Hastings' outside law firms Meyers Nave and/or Wiley Price & Radulovich LLP to Hastings' General Counsel Elise K. Traynum, Esq. and/or one or more Senior Management Group employees of Hastings[;]

3. Electronic Correspondence and Correspondence from Hastings' General Counsel Elise K. Traynum, Esq. and/or one or more Senior Management Group employees of Hastings to Hastings' outside law firm Meyers Nave[;]

4. Electronic Correspondence and Correspondence from Hastings' outside law firm Meyers Nave to Hastings' General Counsel Elise K. Traynum, Esq. and/or one or more Senior Management Group employees of Hastings[;]

5. Electronic Correspondence and Correspondence from Hastings' outside law firm Vartan Law Group (civil litigation) to Hastings' General Counsel Elise K. Traynum, Esq. and/or one or more Senior Management Group employees and/or one or more Senior Management Group employees of Hastings and/or Hastings' litigation insurance carrier representatives[;]

6. Electronic Correspondence and Correspondence from Hastings' General Counsel Elise K. Traynum, Esq. and/or one or more Senior Management Group employees of Hastings to Hastings' outside law firm Vartan Law Group (civil litigation) and/or Hastings' litigation insurance carrier representatives[;]

7. Electronic Correspondence and Correspondence from Hastings' General Counsel Elise K. Traynum, Esq. to one or more other Senior Management Group employees of Hastings[;]

8. Electronic Correspondence and Correspondence from one or more Senior Management Group employees of Hastings to Hastings' General Counsel Elise K. Traynum, Esq.[;]

9. Electronic Correspondence and Correspondence from Marie Hairston to Hillary Kane[;]

10. Electronic Correspondence and Correspondence from Hillary Kane to Marie Hairston[;]

11. Electronic Correspondence and Correspondence from Hillary Kane to Linda Bisesi[;]

12. Electronic Correspondence and Correspondence from Linda Bisesi to Hillary Kane[;]

Privilege Log at 1, 2, 3, 4 (capitalizations in original).

Accordingly, the College shall supplement its responses to Plaintiff's Request for Production No. 16. Any search for or production of relevant documents shall cover documents dating back at least to September 2010. This date is appropriate in light of the entries in the College's privilege log. *See* Dkt. No. 56.

5. Request for Production No. 18

Plaintiff's Request for Production No. 18 is as follows: "*Any and all DOCUMENTS referring, reflecting, or RELATED TO special skills, knowledge, or abilities of employees that were not laid off from YOUR financial aid office.*" (Joint Ltr. at 10) (emphasis and capitalization in original).

The College initially responded to this request, objecting on the grounds that it was ambiguous, overbroad and/or not stated with reasonable particularity, and unduly burdensome. *(Id.)* The College indicated that it would produce the job descriptions of each of the positions in the Financial Aid Department but it would not search for or produce other documents. *(Id.)* In its supplemental response, the College renewed its previous objections. (*Id.* at 11). The College also indicated that in addition to the job descriptions of each of the positions in the Financial Aid Department that it had already produced, it would search the personnel files of each of the other positions in the Department and produce existing documents showing the special skills, knowledge, or abilities of the employee. *(Id.)* However, the College again stated that it would not search for or produce other documents. *(Id.)* The College maintains that it has produced the job descriptions of each of the positions in the Financial Aid Office, has completed its search for the other documents responsive to this request, and will produce these documents, with proper redaction for privacy purposes, upon the entry of an appropriate protective order. *(Id.)*

As discussed *infra* Part III.C., given that the parties have negotiated a protective order and the College has now agreed to sign that order, *see* Joint Ltr. at 3, the College shall supplement its responses to Plaintiff's Request for Production No. 18. *(Id.)* Any search or production of additional documents shall include materials that date back at least to September 2010. This date is appropriate in light of the entries in the College's privilege log, Dkt. No. 56, which the court discusses immediately below.

**B. Privilege Log**

Plaintiff asserts that the College's privilege log "is wholly inadequate as it does not identify by [*sic*] number of documents, the dates, specifics as to the privilege asserted, nor essential foundational facts which would enable a meaningful meet and confer process." (Joint Ltr. at 3). Plaintiff indicates that Defendant continues to group documents by 2-year time frames and unidentified recipients and authors. *(Id.)* The College asserts that it has modified its privilege log to comply with this court's standing order. *(Id.)*

This court's standing order provides that a privilege log shall include the following information for each document or for each category of similarly situated documents:

> (a) The title and description of the document, including number of pages or Bates-number range;
> (b) The subject matter addressed in the document;
> (c) The identity and position of its author(s);
> (d) The identity and position of all addressees and recipients;
> (e) The date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its author(s);
> (f) The steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication;
> (g) The specific basis for the claim that the document is privileged or protected.

Standing Order ¶ 19. The order further provides that a party's "[f]ailure to furnish this information promptly may be deemed a waiver of the privilege or protection." *Id.*

In its four-page privilege log, the College lists 12 distinct document categories. (Privilege Log at 1, 2, 3, 4). Those categories include correspondence between Hastings' General Counsel, Hastings' Senior Management, and outside counsel as well as correspondence between internal personnel. (*Id.* at 1, 2, 3). The College identifies the correspondence between Hastings' General Counsel, Hastings' Senior Management, and outside counsel as privileged and attorney work-product. *(Id.)* The College also identifies the correspondence between internal personnel as attorney work-product, on the basis that the correspondence was designated as requests for information from in-house counsel for trial preparation. (*Id.* at 4). The 12 distinct document categories the College includes in its privilege log account for approximately 1500 pages of material. (*Id.* at 1, 2, 3, 4).

10

1  The court finds that the College's privilege log is deficient in several respects. The
2  College has not adequately identified document authors. (*See, e.g., id.* at 1). Many of the
3  purported author identifiers follow this structure:  "[c]orrespondence from Hastings' General
4  Counsel . . . **and/or** one or more Senior Management Group employees of Hastings . . . ." (*See id.*
5  at 1) (emphasis supplied).  At best, this language suggests that at least one of the individuals
6  mentioned in the description authored the document. (*See id.*) This is insufficient. An
7  appropriate privilege log identifies the author of a document by name, not just by a description of
8  the group of individuals that happens to include the author. Moreover, the College has not
9  included detail supporting the privileges asserted, such as affirmations that no authorized persons
10 have received the communications described in the privilege log, adequately specified the dates
11 on which documents were prepared and sent to persons other than the document's author, or
12 clearly identified the specific individuals who received those documents. (*See id.*)

13  Insofar as the College wishes to assert claims of attorney-client privilege or attorney work-
14 product in response to Plaintiff's requests for production, the College shall provide Plaintiff with
15 an amended privilege log within 21 days of this order. To the extent that the College must modify
16 any other aspects of its privilege log, such as date ranges and document descriptions, in order to
17 adequately identify a document's author, to ensure proper identification of authors and recipients,
18 it shall do so.

19  **C.  Proposed Stipulated Protective Order**

20  The College states that it agreed to produce certain additional private documents upon the
21 entry of a stipulated protective order between the parties. *(Id.)* The College indicates that a
22 stipulated protective order has now been negotiated between the parties. *(Id.)* Plaintiff contends
23 that the College "delayed an entire month after Plaintiff provided as [*sic*] the Northern District
24 Model for Standard Litigation" and that Defendant refused to sign the standard order "despite the
25 fact that both Plaintiff and Defendant Union have agreed to do so." *(Id.)* Plaintiff asserts that
26 Defendant will now sign the stipulated protective order provided more than a month ago. *(Id.)*
27 Plaintiff challenges Defendant's conduct as a delay tactic. *(Id.)*
28

(Left margin: United States District Court / Northern District of California)

The College's production of documents responsive to Plaintiff's Request for Production Nos. 2 and 18 depends, in part, on the entry of a stipulated protective order. *See* discussion *supra* Part III.A., 1, 5. So as to remove the entry of a stipulated protective order as a barrier to the College's production of those documents, *see* Joint Ltr. at 7 ("These documents will be produced promptly when the protective order is entered.") and Joint Ltr. at 11 ("Upon the entry of an appropriate protective order, and with proper redaction for privacy purposes, the College will produce these documents also."), the College is to file the agreed-upon protective order within 7 days from the date of this order.

**D. Certifications of Searches and Productions by the College**

The College asserts that it has certified its document searches and productions in writing. *(Id.)* Plaintiff contends that the College "has still not identified and refuses to identify the electronically stored information systems it has searched to identify potentially responsive documents." *(Id.)* On these grounds, Plaintiff requests that the College "specify what information systems as to which it has placed a litigation hold and what information systems it has searched for documents responsive to Plaintiff's Rule 34 requests, as required under the Court's Guidelines for the Discovery of Electronically Stored Information." (*Id.* at 3-4).

The District's Guidelines for the Discovery of Electronically Stored Information recommend that the parties consider discussing a number of topics, including "systems that contain discoverable ESI" and "search and production." The Guidelines also suggest that the parties discuss:

> The sources, scope and type of ESI that has been and will be preserved . . . including date ranges, identity and number of potential custodians . . . and other details that help clarify the scope of preservation;
> . . .
> Search and production of ESI, such as any planned methods to identify discoverable ESI and filter out ESI that is not subject to discovery, or whether ESI stored in a database can be produced by querying that database and producing discoverable information in a report or exportable electronic file;
> . . .
> [M]ethods and technology used for searching ESI to help identify relevant information and sampling methods to validate the search for relevant information . . . .

Guideline 2.02.  The District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information also encourage the parties to discuss these topics.  Specifically:

- Identification of systems from which discovery will be prioritized (e.g., email, finance, HR systems).
- Description of systems in which potentially discoverable information is stored.
- Location of systems in which potentially discoverable information is stored.
- How potentially discoverable information is stored.
- How discoverable information can be collected from systems and media in which it is stored.

. . .

- The search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable EFI and filter out ESI that is not subject to discovery.
- The quality control method(s) the producing party will use to evaluate whether production is missing relevant ESI or contains substantial amounts of irrelevant ESI.

In its Certification of Searches Performed, the College certifies that it "has searched all locations where" the information Plaintiff seeks in her requests for production "may plausibly be located."[4]  (Cert. of Searches Performed at 1; Dkt. No 56, Ex.1).  In light of the extensive detail set out in the District's Guidelines and Checklist on discovery of electronically stored information, the court finds that the College's certification is insufficient.  Within 21 days of this order, the College shall provide Plaintiff with an amended certification that mirrors the relevant sections of District's Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.  At a minimum, the College shall include responses to Section III (Informal Discovery about Location and Types of Systems) and Section V (Search) of the Checklist.  The College shall also include date ranges of the data available on each system.

//

//

//

//

//

---

[4] The College also certifies that to the extent that Plaintiff has requested production of "any and all" RIF-related documents, complying with such request would be extremely burdensome, costly, and would not be reasonably related to the Plaintiff's claims.  Cert. of Searches Performed at 2.  The court disagrees for the reasons set forth in discussion *supra* Part III.A.1.

### IV. CONCLUSION

Based on the foregoing, the court orders the College to:

(1) File the stipulated protective order agreed upon by the parties within 7 days of this order.

(2) Produce additional documents in response to Plaintiff's Requests for Production Nos. 2, 6, 15, 16, and 18. The College shall serve these additional documents on Plaintiff within 21 days of this order.

(3) Serve an updated certification of searches performed within 21 days of this order.

(4) File an updated privilege log within 21 days of this order, insofar as the College wishes to assert claims of attorney-client privilege or attorney work-product in response to Plaintiff's requests for production.

Furthermore, after the entry of the stipulated protective order and service of the College's supplemental responses, the parties are to meet and confer regarding any other remaining discovery disputes. The parties shall ensure that their meet and confer process conforms to the District's Guidelines for the Discovery of Electronically Stored Information, the District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information, and this court's Standing Order. If, following the meet and confer, Plaintiff is not satisfied with the College's production, the parties shall further meet and confer, in-person and in good faith, prior to seeking further court intervention by way of an updated joint letter. Such updated joint letter must include a declaration from both parties detailing their compliance with the foregoing meet and confer requirements.

IT IS SO ORDERED.

DATE: September 30, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge