UPDATED DISCOVERY LETTER
VITERI-BUTLER v. UC HASTING COLLEGE OF LAW
Case No. 3:12-cv-02651-PJH

RE: COMPLIANCE WITH COURT'S SEPTEMBER 30, 2013 ORDER
Pursuant to your Honor's Order dated September 30, 2013 (Dkt#58), and Order dated November 25, 2013 (Dkt#77) the parties submit this Updated Joint Letter.

**PLAINTIFF'S POSITION**
Plaintiff has sought the reasons for the 2010 hirings of younger persons who now perform the job functions of Plaintiff and others who were laid off, and the objective criteria allegedly used to select Plaintiff and her peers for layoff. Plaintiff has sought this information through the least intrusive means: deposition and interrogatories. Both at the percipient witnesses and 30(b)(6) depositions, Plaintiff has not been able to obtain an answer to these two determinative questions. Through instructions not to answer, breaks with questions pending, speaking objections, and unprepared 30(b)(6) deponents, Hastings has stymied Plaintiff's discovery into these matters.

The Court's Order of September 30, 2013 is clear: documents and communications related to the layoff must be produced. Defendant continues to flout the Court's Order by refusing to disclose its ESI search information, then searching and producing in a non-negotiated and unilateral fashion. Even after the Court ordered disclosure of searches performed, Defendant refuses to do any of the following: (1) Identify the email accounts used by Dean Wu to conduct Hastings business, including frankhwu@me.com; wuf@hastings.edu; frankhw@mac.com, et. al.; (2) Perform any search of emails in any of Dean Wu's email accounts; (3) Certify that all computers used by the decision-makers have been searched; (4) Identify all search parameters used to perform searches; (5) Produce the documents already identified by Hastings using the search terms: "reorg", "reorganization" or "strategic plan".

This conduct has thwarted Plaintiff's discovery of determinative evidence of the reasons Plaintiff was selected for termination and the hiring of younger Caucasians before the layoff who now perform the job functions of the older employees who were laid off. Defendant's conduct has obstructed discovery determinative of Defendant's claim that it used a legitimate business purpose in selecting Plaintiff for termination.

**A.    Summary of Actions Since September 30, 2013.**
At Defendant's request, the parties executed a stipulated protective order, which the Court entered on October 10, 2013 (Dkt #61). On October 18, 2013, Defendant provided its Third Supplemental Response to Plaintiff's First Set of Requests for Production, and produced documents bates numbered HAST3492-HAST5964. The vast majority of that production was comprised of board meetings. On October 21, 2013 at 5:00 p.m. Defendant provided a Certification of Searches Performed and Amended Privilege Log, which is attached hereto as Attachment "A".

On October 25, 2013, the parties met and conferred in person for nearly two hours to comply with the following portion of your Honor's Order. The parties met for nearly two hours and did not come to a resolution on what ESI custodians should be searched and what search terms should be used. When Plaintiff's counsel attempted to raise the "remaining discovery issues" regarding Defendant's responses to Plaintiff's other Rule 34 requests, Defendant terminated the meeting.

Rather than meet and confer further, and without any input from Plaintiff, on October 31, 2013, Defendant's counsel unilaterally selected a number of search terms and an undisclosed number of custodians, and performed an undisclosed search for responsive documents. Defendant's counsel then produced the results of its unilateral search on October 31, 2013:

> We have this week performed the search on the personal computers used by the Chancellor, for the period September 2010 to the present, using the following search terms: "viteri-butler" (which also will find any document with "sara viteri-butler" in it);"reduction in force"; and "financial aid assistant".
> The documents that were generated by applying these search terms to the personal computers resulted in compilation of approximately 1,000 pages of documents, of which attached bates stamped documents HAST5774 to HAST5804 were not among the some 5,700 pages earlier produced in this case.
> A search on these personal computers using the search terms "reorg", "reorganization" and·"strategic plan", will result in (gross estimated) circa twenty-thousand (20,000) documents, according to our document people.

Letter from Michael Vartain, October, 31, 2013. Thereafter, when counsel conferred telephonically concerning the remaining discovery disputes related to the remaining requests for production and the custodians and search terms for ESI, counsel for Defendant stated that the discussion was at an end and that Plaintiff would have to seek judicial intervention.

**B.     Thousands of Pages of RIF Documents Have Not Been Produced.**

The central problem with Defendant's ESI conduct since the Court's September 30, 2013 Order is two fold: thousands of pages of communications related to the RIF or "re-org" have been identified and not been produced, and the searches that have been performed have omitted key decision-makers and percipient witnesses.

Without disclosing what computers or information systems were searched, Defendant, on October 31, 2013 identified the following responsive documents that it has refused to produce: "A search on these personal computers using the search terms "reorg", "reorganization" and·"strategic plan", will result in (gross estimated) circa twenty-thousand (20,000) documents, according to our document people." (Letter from Michael Vartain, October 31, 2013). Defendant's counsel did respond to requests to identify the number of documents containing only the term "reorg" or the term "strategic

plan". Defendant's conduct has precluded the meaningful interactive process necessary to identify the appropriate search terms to target the responsive documents ordered to be produced by the Court. Therefore, Defendant should at a minimum be ordered to produce all documents it has located.

C. **Defendant's Refusal to Negotiate Search Terms and Identify ESI Systems and Custodians.**

The Court's September 30, 2013 Order targeted the ESI searches performed to date, and resulted in at least some light being shed on Defendant's ESI conduct. While Defendant did respond to the Court's Order by serving a certification of searches performed, Defendant's counsel has refused to take the next step and meet and confer in good faith to agree upon (1) the information systems at issue, (2) the custodians, (3) reasonable search terms, or (4) remaining requests for production as to which the ESI searches apply.

When the parties met and conferred on October 25, 2013, Defendant's counsel demanded that Plaintiff produce a comprehensive a list of search terms, and would not address particular information systems or custodians. When Plaintiff's counsel suggested individual search terms, Defendant's counsel responded repeatedly with "Give me a list". After nearly an hour of highly adversarial conversation on the point, Defendant's counsel finally agreed to respond with "possible" and "not possible" to Plaintiff's suggested search terms.

This refusal to identify the email servers and the personal computers of the decision makers as to which additional search terms could be negotiated frustrated the procedure laid out by the Court's September 30, 2013 Order.

D. **Defects In The Unilateral Search Performed by Defendant.**

Despite follow-up correspondence by Plaintiff's counsel, Defendant ignored Plaintiff's suggested terms, ignored Plaintiff's request to identify systems, and ignored Plaintiff's request to discuss the various custodians at issue. Instead, Defendant stopped the meet and confer process and performed a search of undisclosed computer systems.

    1. **Systems**

The two primary systems as to which the parties still have a dispute are (a) the College's email servers, and (b) the variety of personal computing devices and shared drives used by the individual custodians.

        a. **Email Servers**

Defendant has performed no further search on the email servers (or at least has not acknowledged such a search) since the parties met and conferred on October 25, 2013. Most troubling in this regard is that the account of the ultimate decisionmaker, Dean Wu, was searched for an extremely limited set of information: "Emails to and from one individual (Marie Hairston) and only those emails containing Plaintiff's entire name (Sara Viteri-Butler)."

The obvious problem with this search is that it would not locate emails related to "reduction in force" "RIF" and "reorganization". Defendant's refusal to search Dean Wu's email account for anything other than emails to and from Marie Hairston and only emails containing Plaintiff's entire name is not a good faith search, and Defendant has acted in bad faith by refusing to meet and confer further on the issue.

### b. Personal Computers and Shared Drives

During the October 25, 2013 meeting, Defendant refused to identify whether the computer systems at issue: custodians used desktops, laptops, tablets, or smartphones. This refusal made it impossible for Plaintiff to determine whether Defendant's search for ESI was made in a good faith effort to identify relevant information. For example, Plaintiff still does not know if Dean Wu uses a laptop or tablet computer, nor whether he has drafts on those computers of "people to get rid of" and a list of "people to bump up". Based on the current disclosure Plaintiff does not know if Dean Wu selected people months before the strategic plan. Plaintiff does not even know if this information has been preserved.

Prior to the October 25, 2013 meeting, Defendant searched only the personal computers of the following custodians:

Exec. Dir. of HR, Marie Hairston:    Search terms: "Reduction-In- Force", "Reorganization", "Layoffs", "Financial Aid Assistant" and "Sara Viteri- Butler."
Academic Dean, Shauna Marshall:    No search terms disclosed
Dir. of Financial Aid, Linda Bisesi:   No search terms disclosed

After the October 25, 2013 meeting, Defendant searched some portion of Dean Wu's computer(s) as follows: Dean Wu:    "viteri-butler" "reduction in force"; and "financial aid assistant"

Defendant did not, apparently, perform any additional searches of Dean Wu's email accounts on the email servers.

### 2. Custodians

Defendant has not searched the email accounts nor personal computers of Assistant Academic Dean Mr. Keith Wingate, identified in Defendant's Rule 26 Initial Disclosures, for any responsive documents. His communications were specifically requested in Request No. 107.

**E.    Defendant's Refusal to Meet and Confer on Remaining Discovery Issues.**

During the parties' October 25, 2013 meet and confer session, Plaintiff's counsel raised the "remaining discovery disputes" it had with Defendant's ESI as applied to Plaintiff's remaining Rule 34 requests. As Plaintiff raised the first request, Request No. 22, seeking communications between Dean Wu and Linda Bisesi regarding Plaintiff and her job title, Defendant refused to state whether it had searched either Dean Wu's email account or Linda Bisesi's email account for responsive communications. Defendant's

counsel then terminated the meeting[1].  Due to Defendant's refusal to meet and confer on these items on October 25, 2013 or thereafter,  pursuant to the Court's September 30, 2013 Order concerning these remaining discovery disputes, Plaintiff requests that the Court impose an appropriate sanction for failure to abide by the Court's Order.

**F.    Conclusion**

Plaintiff requests that Defendant be ordered to identify the email accounts used by the decisionmakers.  Plaintiff requests that Defendant be ordered to identify all computer systems used by the decisionmakers to conduct Hastings business.   Plaintiff requests that Defendant produce immediately the documents already obtained which relate to the RIF or "reorg".  Plaintiff requests that Defendant be ordered to produce documents responsive to Plaintiff's requests set forth above and to explicitly respond in a Rule 34-complaint fashion whether responsive documents exist, which ESI systems have been searched, which custodians' ESI was searched, and what search terms were used.  In the alternative, Plaintiff requests that evidentiary sanctions or issue sanctions be ordered for Defendant's failure to abide by the Court's September 30, 2013 Order and its refusal to participate in the discovery process.

Plaintiff also requests that the Court sanction Defendant's counsel for refusing to meet and confer in good faith by adhering to the Court's ESI guidelines, and request leave to submit a request for just costs for obtaining Defendant's compliance with the Court's September, 2013 Order.

---

1   A number of remaining discovery disputes exist as to Plaintiff's remaining Rule 34 Requests.  For example:

Request Nos. 23-32  sought documents that "constitute, refer, or relate to" the decision to select the other persons included in the RIF. Defendant's response stated it would search the personnel file only. Defendant would not meet and confer as to whether its ESI searches had encountered documents responsive to these requests.

Request Nos. 33-64 sought communications between AFSCME and Hastings concerning the RIF, the positions to be eliminated, the staffing levels of the affected departments both before and after the collective bargaining agreement.   Defendant unilaterally limited its response to "authorized representatives", and only as to the negotiation of the collective bargaining agreement.  Defendant has not identified the individuals nor what ESI searches have been performed to locate such communications.

Request No. 75 sought internal   communications at UC Hastings regarding any and all proposals, memoranda, agreements, collective bargaining provisions, side agreements, and structures for layoff procedures.  Defendant's response did not comply with Rule 34, and no responsive documents were identified.

Request Nos. 77-82 sought appeals made to any Deans to retain any specific individuals.  Defendant refused to search for responsive documents.

Request Nos. 83-96 sought documents related to the other employees who were laid off attendance and use of leave.   Defendant refused to search for responsive documents.

Request Nos. 97-103 sought the documents referencing any disabilities of the other employees who were laid off.  Defendant refused to search for responsive documents.

## DEFENDANT'S POSITION

  **1.** **Case Overview:** This is a Title VII employment claim. In 2011 Hastings decided to reduce the size of its Juris Doctor class by 25%. Knowing that this fundamental change in the structure of the school would likewise greatly reduce revenues, in 2012, ten staff members received notices of layoff due to position elimination. One of the eighteen staff members affected by a reduction in force was Plaintiff. **Vartain Decl., ¶¶2-4.**

  **2.** **Procedural History:** The Court set non-expert discovery cut-off for November 1, 2013. On October 30, 2013, Plaintiff moved for relief from this deadline. Defendants stipulated to an extension to November 20, 2013. The Court entered an order extending non-expert discovery to November 20, 2013, and ruled that there will be no further extension of discovery. On December 6, 2013, the date set by the Court for filing dispositive motions, Hastings moved for summary judgment of each claim. On December 6, 2013, the date set by the Court for filing dispositive motions, Plaintiff moved for summary adjudication of each affirmative defense filed by Hastings. **Vartain Decl., ¶¶5-6.**

  **3.** **The College Complied with Each Provision of Magistrate Judge's Order:** Plaintiff served seven (7) sets of document demands, with 125 separate requests for documents. Plaintiff moved for further responses and production as to **4 out of 124**[2] requests; the Magistrate Judge issued her order on September 30, 2013; and by October 21, 2013, the College had completed its compliance steps. **Vartain Decl., ¶¶10-12.**

On October 18, 2013, Hastings timely served Amended Responses and Production of Documents (Set One, Nos. 2, 6, 15, 16 and 18) as ordered by the Magistrate Judge. At the same time, Hastings produced documents. On October 31, 2013, Hastings served a further production of documents. **Vartain Decl., ¶¶15-17; Exhibits B and C.**

On October 21, 2013, Hastings timely served and lodged an Amended Certification of Searched Performed with the Court as ordered by the Magistrate Judge. The contents of the Amended Certification mirrored the topics identified in the Checklist for Rule 26(f) Meet and Confer Regarding Electronically-Stored Information and the Guidelines for the Discovery of Electronically Stored Information, with all additional detail, as directed by the Magistrate Judge. **Vartain Decl., ¶¶18-19; Exhibit D.**

---

2 Plaintiff has never moved to compel with regard the Request for Production, Set 7, which contains one document request, Request No. 125.

The Amended Certification identified the ESI systems that had been searched, as well as the search terms used and the date ranges of data available on each system, as directed by the Court. These searches were accomplished by Hastings internal IT personnel, and not only were the searches conducted, but all non-privileged documents retrieved by the searches were also produced by Hastings to Plaintiff. **Vartain Decl., ¶20; Exhibit D.[3]**

The Order of the Magistrate Judge was issued on September 30, 2013, and directed that "after … service of the College's supplemental responses, the parties are to meet and confer regarding any other discovery disputes. The parties shall ensure that their meet and confer process conforms to the District's Guidelines [re ESI]…" Document 58, Order, at p. 14:12-21. **Vartain Decl., ¶21.**

Four days later, on October 4, 2013, the College's counsel requested in writing that all counsel meet to confer on ESI issues. Plaintiff's counsel's failed to promptly respond to the College's letter requesting to meet and confer in-person on ESI matters, and so the first in person meeting on ESI occurred on October 25, 2013. **Vartain Decl., ¶¶22-27; Exhibit E.**

At the October 25 meeting, counsel for Plaintiff placed on his agenda first and foremost, his wish to negotiate searches regarding computers used by Chancellor Wu. The parties discussed various search terms and the enormous volume that would result from searches using imprecise search terms. After this discussion, which lasted over one hour, the College's counsel asked Plaintiff's counsel to specify the search terms he wanted used for these computers, and to do so as soon as possible. The College agreed to respond definitively to whatever proposal was forthcoming from Plaintiff's counsel, and to do so within 24 hours of receiving the proposed search terms in writing. **Vartain Decl., ¶¶29-32.**

By letter of October 25, 2013, the College memorialized its request that Plaintiff's counsel would "very soon set forth in a letter any further searches that you would like Hastings "to perform on its email exchange server and on any personal computers, including the combined search terms that you would like Hastings to use." **Vartain Decl., ¶¶33-34; Exhibit F.**

---

3   The Magistrate Judge also directed Hastings to add additional detail to its privilege log and to serve a fully amended privilege log within 21 days. On October 21, 2013, Hastings served and lodged with the Court, an amended privilege log with all additional detail as directed by the Magistrate Judge. The Order of the Magistrate Judge also directed Hastings to file a stipulated protective order. Hastings filed the stipulated protective order on October 4, 2013. **Vartain Decl., ¶¶13-14; Exhibit A.**

On October 28, in order to expedite the process, and not yet having received a proposal for search terms from Plaintiff's counsel, the College's counsel directed Hasting' IT staff to begin a search of Chancellor Wu's computers with certain search terms that he speculated might come from a forthcoming proposal from Plaintiff's counsel. **Vartain Decl., ¶35.**

By October 31, 2013, there was still no proposal for search terms from Plaintiff's counsel. By letter of that date, the College informed Plaintiff's counsel that the College had done a search on the personal computers used by the Chancellor, for the period September 2010 to the present, using certain named search terms. On the same date, the College produced the resulting 30 pages of documents found during the search that not been previously produced by Hastings to Plaintiff. **Vartain Decl., ¶¶36-38; Exhibits H and C.**

In the October 31, 2013 letter, the College also informed Plaintiff that Hastings had additionally done a preliminary search on these personal computers using the individual search terms "reorg" and "reorganization," and "strategic plan"; but that these search terms resulted in some circa twenty-thousand (20,000) documents. The College's counsel again suggested that Plaintiff agree to make a proposal using combined search terms, and the College's counsel further invited a discovery conference. **Vartain Decl., ¶39; Exhibit H.**

The College also sent letters of November 1 and November 6 that proposed scheduling further discovery conferences between the parties: Plaintiff's counsel did not respond to schedule discovery conferences. **Vartain Decl., ¶¶40-41; Exhibits I, J and K.**

Plaintiff's counsel never provided the College with a proposal for what further search terms he wanted used in searches of either the College's email exchange server or the personal computers of the Chancellor. **Vartain Decl., ¶¶39-42.**

    **4.**     **Hastings' Specific Responses to Plaintiff's Allegations:**

**(a)**     Plaintiff's portion of the Joint letter first asserts that Hastings is "refusing to disclose its ESI search information, then searching and producing in a non-negotiated and unilateral fashion."

To the contrary, the College has disclose its ESI search information to Plaintiff in its Certification and Amended Certification of Searches performed, and in each of the Responses by Hastings to Sets 1 through Six of the Requests for Production of Documents: Hastings has confirmed that it has produced all documents that Plaintiff requested, other than privileged documents listed on its amended privileged log. **Vartain Decl., ¶54.**

In its Certification and Amended Certification of Searches and Supplement thereto, and in each of the Responses by Hastings to Sets 1 through Six of the Requests for Production of Documents, Hastings has in writing disclose its ESI search information. **Vartain Decl., ¶54; Exhibits D and O.**

With specificity, in the Amended Certification of Searches Performed, Hastings explicitly disclosed each and all items that are set forth in the ESI Guidelines, namely: Identification of Systems From Which Discovery Has Been Prioritized; Location and Types of Systems of the College; Description of Systems In Which Potentially Discoverable Information Is Stored; How Potentially Discoverable Information Is Stored; How Discoverable Information Can Be Collected From Systems And Media In Which It Is Stored; Searches Performed; Search Methods; Quality Control Methods; and Identification Of Searches Not Performed. **Vartain Decl., ¶54; Exhibit D.**

**(b)** Plaintiff's portion of the Joint letter states that: "Defendant…is searching and producing in a non-negotiated and unilateral fashion." To the contrary, the College requested a proposal from Plaintiff in order to get a negotiated agreement as to the precise search terms that Plaintiff wanted. This attempt to obtain a negotiated agreement failed through no fault of Hastings, as counsel for Plaintiff would not commit to what search terms he wanted used. Further, the preexisting and extensive searches that Hastings had previously performed on its electronic and other systems had been earlier disclosed in detail in its Certification and Amended Certification. In short, Hastings did further searches during the meet and confer process, but did not act unilaterally; rather, it repeatedly sought a definitive proposal from Plaintiff for electronic search terms, which proposal that never came, either before or after the passage of the discovery cut off date. **Vartain Decl., ¶55, 33-42; Exhibits F, G, H, I, J, K.**

**(c)** Plaintiff's portion of the Joint letter further states: "Defendant refuses to do any of the following: (1) Identify the email accounts used by Dean Wu to conduct Hastings business, including frankhwu@me.co wuf@hastings.edu; frankhw@mac.com, et. al.; 2) Perform any search of emails in any of Dean Wu's email accounts." **Vartain Decl., ¶56.**

To the contrary, the College performed searches on all computers used by the Chancellor for business of Hastings, using reasonable search terms: "viteri-butler" (which also will find any document with "sara viteri-butler" in it); "reduction in force"; and "financial aid assistant." The College immediately produced the resulting documents, and the College repeatedly requested a proposal from Plaintiff for any other searches that Plaintiff wanted—a proposal that never came forth. As to email monikers, Hastings has received no interrogatories, requests for admission, deposition questions or other discovery demands for identification of the names of email accounts used by any officer, agent or employee of Hastings. **Vartain Decl., ¶56; Exhibit O.**

**(d)** Next, Plaintiff's portion of the Joint letter states: "Defendant refuses to…(3) Certify that all computers used by the decision-makers have been searched." This is untrue. The College has informed Plaintiff of all computers and systems that have been searched. In addition to the above-identified searches of the computers used by the Chancellor, in its Amended Certification, the College stated under oath that the computers used by Academic Dean Shauna Marshall; HR Executive Director Marie Hairston; first line supervisor Bisesi, and the chief financial officer, were all searched. This includes all people whom Plaintiff could reasonably consider "decision-makers."

The Amended Certification also identified the search terms. **Vartain Decl., ¶57; Exhibit D.**

**(e)** Next, Plaintiff's portion of the Joint letter states: **"**Defendant refuses to… (4) Identify all search parameters used to perform searches." This is untrue. As explained above, and in detail in the attached Declaration and in the College's Amended Certification and Supplement to Amended Certification, the College has informed Plaintiff of its search parameters used to perform searches. **Vartain Decl., ¶58; Exhibits D and O.**

**(f)** Finally, Plaintiff's portion of the Joint letter states: "Defendant refuses to…(5) produce the documents identified using search terms: 'reorg,' 'reorganization' or 'strategic plan.'" This is untrue. As explained in detail in the attached Declaration, the College has not refused to produce such documents: Plaintiff has not requested that the results of such search terms be produced. On just the computers used by the Chancellor, Hastings has explained to Plaintiff in writing, and as stated above and in the attached Declaration, that such a search would yield circa 20,000 documents. Hastings offered to do a search using "combined search terms" on these computers to narrow the volume of documents obtained. Plaintiff did not respond to this offer, as explained above, in the attached Declaration and exhibits. **Vartain Decl., ¶59; Exhibits D and O.**

     **5.** **Other:** The College has produced each and every document that Plaintiff has requested. Plaintiff has not requested production of the some 20,000 documents referenced in Paragraph 4(f), above.

**Conclusion:** The College has fully complied with each and all provisions of the September 30 order of the Court.

**RESPECTFULLY JOINTLY SUBMITTED,**

**SMITH PATTEN**

   /s/ *Spencer Smith*
Spencer Smith
Dow W. Patten
Attorneys for Plaintiff Sara Viteri-Butler


**VARTAIN LAW GROUP**


      /s/ Michael J. Vartain
Michael J. Vartain, Esq.
Vartain Law Group
Attorney for Defendant University of
California, Hastings College of the Law