United States District Court

For the Northern District of California

1

2

3        UNITED STATES DISTRICT COURT

4        NORTHERN DISTRICT OF CALIFORNIA

5

6

7   SARA VITERI-BUTLER,

8              Plaintiff,                    No. C 12-2651 PJH

9        v.                                  **ORDER GRANTING DEFENDANT'S
                                             MOTION FOR SUMMARY JUDGMENT**
10  UNIVERSITY OF CALIFORNIA,
    HASTINGS COLLEGE OF THE LAW,
11  et al.,

12             Defendants.
    _____/

13

14       The parties' motions for summary judgment came on for hearing before this court on

15  January 22, 2014.  Plaintiff appeared by her counsel Dow W. Patten and Spencer Smith,

16  and defendant appeared by its counsel Michael J. Vartain.  Following the hearing, the court

17  ordered supplemental briefing, which was complete on February 26, 2014.  Having read the

18  parties' papers and carefully considered their arguments and the relevant legal authority,

19  the court hereby GRANTS defendant's motion, and DENIES plaintiff's motion as moot, as

20  follows.

21                              **BACKGROUND**

22       Plaintiff Sara Viteri-Butler was employed by defendant University of California,

23  Hastings College of the Law ("Hastings" or "the College") for 27 years, from 1984 until she

24  was laid off in 2012.  In approximately 1996, she became a Financial Aid Office Assistant.

25  This was the sole clerical position in the Financial Aid Department.

26       In December 2009, Hastings hired Frank S. Wu to serve as the new Chancellor and

27  Dean of the College.  Chancellor Wu announced a plan for the future of the College.  This

28  plan led to the formation of the Strategic Plan Committee, which in turn developed a

**United States District Court**
For the Northern District of California

1    Strategic Plan.  The College announced and published the Strategic Plan in August 2011.

2    Part of the Plan included the reduction of the J.D. class by 25%.  Other goals were

3    "maintain[ing] financial health" and "reduc[ing] core operating expenses," which in turn

4    required a reduction in the salary budget.  The goal was a reduction of over $1 million.

5         In December 2011 and January 2012, plaintiff took time off from work to have a

6    series of laser eye surgeries.

7         In January 2012, Chancellor Wu informed the Hastings employees that there would

8    be layoffs in the coming months.  Hastings began by freezing a number of vacancies in

9    staff-side employment positions, and then implemented a voluntary separation program,

10   through which a number of employees left the College.

11        In March 2012, Hastings implemented an involuntary reduction in force ("RIF").

12   Chancellor Wu had previously given the head of each Division in the College a particular

13   target dollar reduction, but allowed them discretion to determine how to achieve those

14   salary budget reductions within their respective divisions, subject to certain restrictions.

15   The goal for salary savings in the Academic Division was $.5 million.  The head of the

16   Academic Division was Academic Dean Shauna Marshall.  The Academic Division was

17   instructed to avoid salary savings from the faculty salary budget, since another goal of the

18   College was to improve the faculty-student ratio and to be able to recruit the best faculty.

19        One of the departments within the Academic Division is the Financial Aid

20   Department.  Dean Marshall explains in a declaration filed in support of Hastings' motion

21   how she made the decisions regarding layoffs within the Academic Division.  Assistant

22   Dean for Financial Aid Linda Bisesi also submitted a declaration describing the business

23   facts of the decision by Dean Marshall.

24        Dean Marshall (age 60, African-American, and a civil rights attorney) discussed with

25   Assistant Dean Bisesi (also age 60) the functions of each of the five budgeted positions in

26   the Financial Aid Department, and reached the business decision that eliminating the

27   clerical position (Financial Aid Assistant) would save funds without causing as serious an

28   impact on operations as would reducing other positions in the Department.  Dean Marshall

United States District Court
For the Northern District of California

1   analyzed the functions of each of the five budgeted positions in the Financial Aid
2   Department, with the primary consideration being which position, if eliminated, could have
3   its duties absorbed most easily by the remaining positions – i.e., which of the five positions
4   was the least essential.

5       Dean Marshall determined that the duties of the Financial Aid Assistant position
6   were the least essential to the core departmental functions of assessing financial aid
7   applications and determining the need and proper financial aid packages for the students.
8   Both Dean Marshall and Assistant Dean Bisesi judged that the Financial Aid Assistant's
9   duties were largely clerical, and were less involved than those of the other positions with
10  the analytical work needed to comply with the governmental regulations and to determine
11  proper awards of financial aid to the students.

12      Thus, Dean Marshall selected the Financial Aid Assistant position for elimination.
13  Both Dean Marshall and Assistant Dean Bisesi determined that plaintiff did not have the
14  skills and experience to effectively perform the range of functions of any other position in
15  the Financial Aid Department.

16      In all, pursuant to the RIF, ten staff members received notices of layoff due to
17  position elimination (one of whom was instead reassigned to a different position).  Ten
18  additional staff members received notices of reduction from full-time to part-time status
19  (one of which was withdrawn).  Thus, College-wide, a total of 18 staff members were
20  affected by the RIF.  One of those 18 staff members was plaintiff.

21      Dean Marshall did not consider plaintiff's age, race, or health condition, and plaintiff
22  herself negates any discriminatory motive in her deposition testimony and other discovery
23  responses.  Hastings invited plaintiff in March and July 2012 to consider returning to
24  employment at Hastings in another clerical position (including one in the Department of
25  Career Services) that became available after plaintiff's layoff.  Plaintiff did not respond to
26  any of those invitations, and in August 2012, filed for her UC retirement pension.

27      Following the elimination of plaintiff's position, the number of employees in the
28  Financial Aid Department was four, and it has remained at that level since then.  Plaintiff's

1   clerical duties were divided up among the four remaining employees in the Department.

2       On April 2, 2012, plaintiff filed an administrative charge with the California

3   Department of Fair Employment and Housing ("DFEH"), alleging retaliation and failure to

4   prevent discrimination.  She subsequently received a right-to-sue letter from DFEH.  On

5   May 3, 2012, she filed an administrative charge with the Equal Employment Opportunity

6   Commission ("EEOC"), alleging retaliation and discrimination based on national origin, age,

7   and disability.  She subsequently received a right-to-sue letter from the EEOC.

8       Plaintiff filed the original complaint in this action on May 23, 2012, against SEIU

9   Local 3299 and Hastings.  In August 2012, pursuant to stipulation, plaintiff amended the

10  complaint to substitute AFSCME Local 3299 ("AFSCME") in place of SEIU Local 3299.

11      Plaintiff filed the second amended complaint on November 15, 2012, asserting

12  seven causes of action – (1) age discrimination in violation of the Fair Employment and

13  Housing Act ("FEHA"), Cal. Gov't Code § 12900, et seq.; (2) disability discrimination in

14  violation of FEHA; (3) retaliation in violation of FEHA; (4) race discrimination in violation of

15  FEHA; (5) interference with right to receive benefits under the pension plan, in violation of

16  the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; (6) age

17  discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

18  § 621, et seq.; and (7) race discrimination in violation of 42 U.S.C. § 1981.  AFSCME was

19  subsequently dismissed pursuant to stipulation, and Hastings is the sole defendant

20  remaining in the case.

21      Hastings then filed the present motion for summary judgment as to all causes of

22  action, or in the alternative, partial summary judgment.  Plaintiff filed a motion for summary

23  judgment as to 15 of Hastings' 19 affirmative defenses.

24      At the hearing, the court directed that the record remain open so that the parties

25  could file supplemental briefs as ordered by the court.  Following the hearing, the court

26  issued an order directing plaintiff to file a third amended complaint correcting certain errors

27  noted by the court at the hearing, and appending copies of the administrative charges and

28  right-to-sue letters issued by EEOC and/or DFEH.

**United States District Court**
For the Northern District of California

**DISCUSSION**

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id. A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.   Defendant's Motion

   1.   Discrimination claims

Hastings seeks summary judgment as to the first and sixth causes of action for age discrimination (ADEA and FEHA), the second cause of action for disability discrimination

United States District Court

For the Northern District of California

1   (FEHA), and the fourth and seventh causes of action for race discrimination (FEHA and

2   § 1981).

3        The ADEA imposes liability for discrimination "because of such individual's age."  29

4   U.S.C. § 623(a)(1); see Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175-77 (2009).  FEHA

5   prohibits employers from discharging or dismissing any employee over 40 years old based

6   on the employee's age.  Cal. Gov't Code §§ 12926(b), 12940(a); see Harris v. City of Santa

7   Monica, 56 Cal. 4th 203, 232 (2013).  Similarly, FEHA also prohibits employees from

8   discharging or dismissing any employee based on his/her disability or race.  Cal. Gov't

9   Code § 12924(a).

10       In evaluating claims of disparate treatment in employment under § 1981, district

11  courts are guided by Title VII analysis.  Surrell v. California Water Serv. Co., 518 F.3d

12  1097, 1103 (9th Cir. 2008); see also Manatt v. Bank of America NA, 339 F.3d 792, 799 (9th

13  Cir. 2003) (federal courts apply the same standards in § 1981 actions as in Title VII race

14  discrimination cases).

15       A disparate treatment claim must be supported by direct evidence of discrimination,

16  or may instead be evaluated under the burden-of-proof-and production analysis set forth in

17  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  Because state and

18  federal laws are similar, California courts look to federal precedent when interpreting FEHA.

19  Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000).  In particular, courts use the

20  McDonnell Douglas burden-shifting framework and other federal employment law principles

21  when analyzing disparate-treatment claims under FEHA.  See Schechner v. KPIX-TV, 686

22  F.3d 1018, 1023 (9th Cir. 2012); Earl v. Nielsen Media Res., Inc., 658 F.3d 1108, 1112 (9th

23  Cir. 2011).

24       Here, plaintiff has presented no direct evidence of disparate treatment.  Thus, she

25  can survive summary judgment on her discrimination claims only if she first provides

26  sufficient evidence to establish a prima facie case of discrimination.  If she succeeds, the

27  burden shifts to Hastings to produce evidence of a legitimate, nondiscriminatory reason for

28  the adverse action.  If Hastings successfully carries that burden, the ultimate burden shifts

6

United States District Court

For the Northern District of California

1  to plaintiff to raise a triable issue of material fact as to whether the proffered reasons for the

2  adverse action are a mere pretext for unlawful discrimination.  <u>See</u> <u>Shelley v. Geren</u>, 666

3  F.3d 599, 607-08 (9th Cir. 2012).  Notwithstanding the burden-shifting, the ultimate burden

4  of proof remains with plaintiff to show that Hastings intentionally discriminated against her

5  based on her age, disability, or race.  <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1281

6  (9th Cir. 2000).

7       Hastings argues that the court should grant summary judgment because plaintiff

8  cannot establish a prima facie case of discrimination on the basis of age, disability, or race,

9  and that even if she could, she cannot establish a triable issue with regard to whether

10  Hastings' articulated reason for the layoff was pretextual.

11       To establish a prima facie case of discrimination through circumstantial evidence,

12  plaintiff must show that she was a member of the protected class (40 years of age or older;

13  a person with a disability; a person of a minority race); that she suffered an adverse

14  employment action; that at the time of the adverse action she was satisfactorily performing

15  her job; and that she was replaced in that position by a person outside the protected class

16  who had equal or inferior qualifications, or was discharged under circumstances otherwise

17  giving rise to an inference of discrimination.  <u>See</u> <u>Diaz v. Eagle Produce, Ltd. Partnership</u>,

18  521 F.3d 1201, 1207 (9th Cir. 2008); <u>see also</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>,

19  530 U.S. 133, 142 (2000); <u>Pottenger v. Potlach Corp.</u>, 329 F.3d 740, 745-46 (9th Cir.

20  2003); <u>Guz</u>, 24 Cal. 4th at 354-55.

21       The Ninth Circuit has repeatedly noted that "[t]he burden of establishing a prima

22  facie case of disparate treatment is not onerous."  <u>See</u>, <u>e.g.</u>, <u>Lyons v. England</u>, 307 F.3d

23  1092, 1112 (9th Cir. 2002) (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248,

24  253 (1981)).  On summary judgment, the degree of proof necessary to establish a prima

25  facie case "is minimal and does not even rise to the level of a preponderance of the

26  evidence."  <u>Schechner v. KPIX-TV</u>, 686 F.3d 1018, 1025 (9th Cir. 2012) (citing <u>Wallis v.</u>

27  <u>J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994)).

28       Here, Hastings argues that plaintiff cannot establish a prima facie case of

United States District Court
For the Northern District of California

1    discrimination because she cannot meet the fourth element – that she was replaced by

2    someone outside the protected class with equal or lesser qualifications, or that she was

3    discharged under some other circumstances giving rise to an inference of unlawful

4    discrimination.

5         Hastings asserts that plaintiff was not replaced at all – that prior to her layoff, there

6    were five positions in the Financial Aid Department, and that after her layoff, there were

7    four positions, a situation that continues to this day.  To be clear, the evidence shows that

8    at the time that plaintiff was laid off, one of the four remaining positions was vacant;

9    however, it was filled shortly thereafter, in March 2012.  Plaintiff's administrative duties

10   were divided among those four employees, and no one was hired to take over all the duties

11   plaintiff had previously performed.  Moreover, Hastings argues, of those four Financial Aid

12   employees, all had qualifications superior to plaintiff's, and three were approximately the

13   same age as she was.

14        Hastings also contends that there is no evidence of any discriminatory animus, and

15   that plaintiff in her deposition acknowledged the absence of age or race motive in Dean

16   Marshall's decision to lay her off, and also testified that during her years of employment at

17   Hastings, no one at the College had ever said or done anything negative relating to her

18   age, race, or national origin, or relating to any medical condition.

19        Hastings notes that Dean Marshall, the person who made the layoff decision, is

20   herself a member of a minority race, and is older than plaintiff.  Dean Marshall states in her

21   declaration that all the Hastings colleagues with whom she discussed her decision to

22   eliminate the Financial Aid Assistant position were over age 40, and most were over age

23   55.  In addition, both Dean Marshall and Chancellor Wu have a history of civil rights

24   advocacy.

25        As noted above, if the plaintiff succeeds in establishing a prima facie case, the

26   burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its

27   employment decision.  Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir. 2007); see

28   also Surrell, 518 F.3d at 1106.  Once that burden is met, the inference of discrimination or

United States District Court
For the Northern District of California

1    retaliation raised by the prima facie case is dispelled.  St. Mary's Honor Ctr. v. Hicks, 509

2    U.S. 502, 510-11, (1993).  The plaintiff must then provide evidence showing that the

3    asserted reason was a pretext for unlawful discrimination or retaliation.  Reeves, 530 U.S.

4    at 146-50.

5         Hastings asserts that to the extent that the court determines that plaintiff has met the

6    elements of the prima facie case, Hastings has articulated a legitimate business reason for

7    the layoff – the need to reduce the size of its J.D. class, and the concomitant need to

8    reduce its staff salary budget – and plaintiff has no evidence showing that the decision to

9    downsize was motivated by some discriminatory motive.  Hastings contends that the

10   testimony of its four representatives – Chancellor Wu, Dean Marshall, Assistant Dean

11   Bisesi, and HR Executive Director Marie Hairston – is undisputed, and establishes that the

12   reason for eliminating plaintiff's position was Hastings' reduction in revenue and Dean

13   Marshall's determination that of the five positions in the Financial Aid Department,

14   elimination of plaintiff's position would have the least negative impact on the department's

15   operations.

16        In opposition, plaintiff notes that the parties agree that plaintiff meets the first three

17   elements of the prima facie case, and that the dispute involves the fourth element.  In

18   Coleman, the Ninth Circuit held that where a discharge results from a RIF, a reasonable

19   inference of discrimination can arise where the employer had a continuing need for the

20   discharged employee's services and the discharged employee's duties were still being

21   performed, or where others not in the protected class were treated more favorable.

22   Coleman, 232 F.3d at 1281.  Here, plaintiff contends that she was "replaced" by a 25-year-

23   old Caucasian woman named Rosanna Woods, referring to the Assistant Director position

24   that was vacant at the time plaintiff was laid off, but was filled shortly afterwards.

25        Plaintiff notes that Hastings asserts that Ms. Woods did not replace plaintiff, as

26   plaintiff's position was eliminated and Ms. Woods was hired to fill the vacant Assistant

27   Director position after plaintiff's termination.  However, plaintiff argues, "the fact that their

28   job titles were different is not dispositive" – and "the trier of fact is not bound by UC

9

United States District Court

For the Northern District of California

1    Hastings' classification of Ms. Woods' job," as "the trier of fact's focus is on the fungibility of

2    the employees' positions."

3          Plaintiff does not dispute that after she was laid off, her duties were dispersed

4    among the four remaining Financial Aid Department employees.  However, she claims that

5    the fact that there is testimony to the effect that the duties she performed were "essential"

6    and that unless those duties were performed, the College would have trouble servicing the

7    student body in a timely manner, and the fact that it is undisputed that Ms. Woods took

8    over at least a quarter of plaintiff's former duties, are sufficient to create a triable issue as to

9    whether Ms. Woods "replaced" plaintiff in her position as Financial Aid Assistant.

10         Apart from this, plaintiff also argues that she can show that her layoff occurred under

11   circumstances giving rise to an inference of discrimination.  She contends that Assistant

12   Dean Bisesi testified that she objected to the elimination of plaintiff's position because the

13   Financial Aid Department needed to retain all five positions, and Ms. Bisesi even offered to

14   "downgrade" plaintiff's salary in the hope that the College would decide to retain her

15   position, but that Chancellor Wu stated nonetheless that plaintiff was being let go for

16   financial reasons.  However, she asserts, this was plainly false, since the number of

17   employees in the Financial Aid office remained the same for both 2012 and 2013 (four) but

18   the total salaries after the layoff increased from $307,533 to $314,336.

19         In addition, plaintiff argues that the Strategic Plan articulates no "objective criteria"

20   for the layoffs, and asserts that Chancellor Wu was unable to say in his deposition what

21   objective criteria were used to make the decisions to select the employees who were laid

22   off.

23         Next, plaintiff contends that she has evidence sufficient to create a triable issue with

24   regard to whether Hastings' articulated reason for the layoff was a pretext for

25   discrimination.  For example, she claims that within 18 days of her termination, Hastings

26   hired a younger, non-Hispanic employee (Ms. Woods) to work in the Financial Aid

27   Department; and that during Hastings' "restructuring" of the staff, younger non-Hispanic

28   employees were hired while other older Hispanic employees were laid off.

United States District Court

For the Northern District of California

1    Plaintiff also contends that documents produced by Hastings in discovery included

2  lists of employees by age, and claims that Hastings was seeking out the "eligibility of

3  retirement and the current service credit" of Hastings staff members as of January 1, 2012.

4    Plaintiff asserts further that she was better qualified than her "replacements" (an

5  apparent reference to Ms. Woods); that her supervisor Assistant Dean Bisesi analyzed

6  plaintiff's position and found it "essential" (referring to a 2007 survey conducted by outside

7  consultants regarding Hastings staffing needs, which concluded that the Financial Aid

8  Department should increase its staff); that Assistant Dean Bisesi requested that Dean

9  Marshall find some way to keep plaintiff in the Administrative Assistant position; that

10  Hastings has offered "misinformation regarding the economic necessity for the layoffs

11  (referring to a statement by Chancellor Wu in March 2012 that Hastings was in "very good

12  financial condition," and nearly simultaneous statements regarding the need to reduce the

13  budget by over $1 million; also referring to salary increases and increases in overall

14  budgets in other College departments); and that a negotiator for the Union (AFSCME)

15  described Hastings' system of job classification as a "total mess" with "no rhyme or reason

16  to job titles and job classifications, job series, job duties assigned to different titles."

17    The court finds that the motion must be GRANTED.  Plaintiff's articulation of the

18  prima facie case is thin, as she has not shown that she was replaced by someone outside

19  of the protected class with equal or lesser qualifications.  The position that was filled after

20  the elimination of plaintiff's position was a vacant Assistant Director position, and the

21  evidence shows that plaintiff was not qualified to perform the duties of this position.  Plaintiff

22  has provided no evidence to counter Hastings' showing that after plaintiff's position was

23  terminated there were four positions in the department, and that there are still only four

24  positions in the department.  Thus, plaintiff's claim that she was "replaced" lacks any

25  evidentiary support.

26    In addition, plaintiff has not submitted any evidence of circumstances giving rise to

27  an inference of discrimination.  For example, she has provided no evidence to contradict

28  Hastings' detailed evidence setting out the steps that led to her layoff, which involved no

United States District Court

For the Northern District of California

1    consideration of age, race, disability, or other protected status.  The fact that Assistant

2    Dean Bisesi did not want any position in the Financial Aid Department to be eliminated is

3    not evidence that supports plaintiff's claim of discrimination.  Moreover, Assistant Dean

4    Bisesi stated in her declaration that in her opinion, if any of the five positions in her

5    department were going to be eliminated, the clerical position was the one to eliminate.

6         The fact that Chancellor Wu could not explain in detail why plaintiff's position was

7    chosen for elimination is of no significance.  The evidence shows that Chancellor Wu was

8    involved in the process of preparing the Strategic Plan, but that the decisionmaker

9    regarding elimination of positions in the Academic Division was Academic Dean Marshall,

10   who has provided a detailed declaration explaining her decision to eliminate the clerical

11   position in the Financial Aid Department.

12        The motion is granted, however, because plaintiff has not provided "specific" and

13   "substantial" evidence that is sufficient to create a triable issue as to whether Hastings'

14   nondiscriminatory explanation is a pretext for discrimination.  See Bodett v. CoxCom, Inc.,

15   366 F.3d 736, 743 (9th Cir. 2004); Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th

16   Cir. 1998).

17        Hastings has provided declarations from Chancellor Wu, Dean Marshall, Assistant

18   Dean Bisesi, and HR Director Hairston describing the implementation of the Strategic Plan

19   (including the decision to reduce staff salaries and positions), the staff reduction process,

20   and the method of determining who would be laid off; and a declaration from HR

21   Department analyst Nina Padilla to the effect that in February 2012 there were 173 staff

22   members at Hastings, approximately 111 of whom were over 40, and that in September

23   2012 there were 160 staff members employed by Hastings, 99 of whom were over 40.

24        The evidence shows that Chancellor Wu set a $.5 million goal for budget reduction

25   in the Academic Division; that Dean Marshall and Assistant Dean Bisesi discussed the five

26   budgeted positions in the Financial Aid Department, and Dean Marshall concluded that the

27   clerical position (Financial Aid Assistant) could be eliminated with the fewest adverse

28   effects on operations; that Dean Marshall did not consider plaintiff's age, race, or health

United States District Court

For the Northern District of California

1    condition in making the decision to terminate her position; and that after plaintiff's position

2    was terminated, Hastings invited her to apply for other clerical position openings in the

3    College.  Plaintiff submitted no declaration in opposition to the motion, and has submitted

4    no declarations from any co-worker with personal knowledge.

5          The evidence cited by plaintiff is not sufficient to establish a triable issue as to

6    pretext.  For example, as noted above, there is no evidence that Ms. Woods was hired to

7    "replace" plaintiff, or that plaintiff was better qualified than Ms. Woods – indeed, the

8    evidence is to the contrary.  The fact that Assistant Dean Bisesi attempted to persuade

9    Dean Marshall not to eliminate the Financial Aid Assistant position is not evidence

10   suggesting that plaintiff was laid off based on some discriminatory animus.

11         As for the "document" that plaintiff claims demonstrates that Hastings was targeting

12   employees by age, the specific exhibit cited by plaintiff consists of what appears to be

13   approximately 100 pages of random and unidentified documents, including letters, emails,

14   and other Hastings documents.  It is true that among those pages are what appear to be

15   charts listing individuals' names, ages, and birth dates.  But there is no indication that the

16   purpose of preparing these documents was to target older employees, and Hastings

17   provides evidence to the effect that it did not use the information for that purpose.

18   Moreover, the documents lack foundation.

19         2.     Retaliation claim

20         In the third cause of action, plaintiff alleges that Hastings retaliated against her for

21   "taking protected leave and participating in union activities."  Hastings asserts that plaintiff

22   cannot establish a prima facie case of retaliation.

23         Retaliation claims are also analyzed under the McDonnell Douglas shifting-burdens

24   framework.  To make out a prima facie case of retaliation, an employee must show that he

25   engaged in a protected activity; that his employer subjected him to an adverse employment

26   action; and that a causal link exists between the protected activity and the adverse action.

27   Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  Once the prima facie case is

28   established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory

United States District Court

For the Northern District of California

1   reason for its actions; at that point, the plaintiff must produce evidence to show that the

2   stated reasons were a pretext for retaliation.  Bergene v. Salt River Project Agric.

3   Improvement & Power Dist., 272 F.3d 1136, 1140-41 (9th Cir. 2001).

4       Hastings argues that plaintiff cannot make out a prima facie case of retaliation

5   because she cannot show a causal link between her layoff and any protected activity.  A

6   causal link can be established by "an inference derived from circumstantial evidence."

7   Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1075 (9th Cir. 2003) (quotation and

8   citation omitted).  An example of such circumstantial evidence would be evidence that the

9   employer knew that the employee had engaged in protected activities, and the proximity in

10  time between the protected action and the alleged retaliatory employment action.  Jordan v.

11  Clark, 847 F.2d 1368, 1376 (9th Cir.1988); see also Yartzoff v. Thomas, 809 F.2d 1371,

12  1376 (9th Cir. 1987).

13      Here, Hastings asserts that the evidence is undisputed that the decisionmaker –

14  Academic Dean Marshall – did not know that plaintiff had any health condition regarding

15  her eyes, or might require a period of leave in the future.  Thus, Hastings argues, plaintiff

16  cannot establish a causal link between her leave and the decision to eliminate her position.

17      As with the discrimination claims, Hastings argues that to the extent that the court

18  determines that plaintiff has met the elements of the prima facie case, Hastings has

19  articulated a legitimate business reason for the layoff – the need to reduce the size of its

20  J.D. class, and the concomitant need to reduce its staff salary budget.  Hastings asserts

21  that plaintiff has no evidence showing that the decision to downsize the entire law school

22  staff was motivated by some desire to retaliate against her.

23      Hastings contends that the undisputed testimony of Chancellor Wu, Dean Marshall,

24  Assistant Dean Bisesi, and HR Director Hairston establishes that the reason for eliminating

25  plaintiff's position was Hastings' reduction in revenue and Dean Marshall's determination

26  that of the five positions in the Financial Aid Department, elimination of plaintiff's position

27  would have the least negative impact on the department's operations.

28      Plaintiff does not offer any separate argument with regard to the retaliation claim in

14

United States District Court

For the Northern District of California

1   her opposition, as her discussion of the prima facie case is focused solely on the claims of

2   discrimination based on age and race.  In particular, she offers nothing in opposition to

3   Hastings' assertion that she cannot establish a prima facie case of retaliation because she

4   cannot show a causal link between her layoff and any protected activity, including the

5   taking of medical leave.

6       The motion is GRANTED.  Plaintiff has not established all the elements of the prima

7   facie case, as she has shown no causal link between her layoff and any protected activity,

8   and indeed made no argument in her opposition with regard to the retaliation claim.

9       3.   ERISA § 510 claim

10      In the fifth cause of action, plaintiff alleges that she was a beneficiary and participant

11  in an employee benefit plan with Hastings, and asserts that in terminating her, Hastings

12  violated ERISA § 510 by interfering with her right to receive pension benefits.  Specifically,

13  plaintiff alleges that if she had been terminated on August 5, 2012 (rather than on March 8,

14  2012), her Lump Sum Cashout benefit under the retirement plan that covered her at

15  Hastings would have been at least $32,055.00 greater than it was on her actual termination

16  date.

17      Under ERISA § 510, it is "unlawful for any person to discharge, fine, suspend, expel,

18  discipline, or discriminate against a participant or beneficiary for exercising any right to

19  which he is entitled under the provisions of an employee benefit plan . . . , or for the

20  purpose of interfering with the attainment of any right to which such participant may

21  become entitled under the plan . . . ."  29 U.S.C. § 1140.

22      Hastings argues that summary judgment must be granted as to this cause of action

23  because the retirement plan at issue is the University of California Retirement Plan

24  ("UCRP"), a governmental plan offered by the State of California which is not governed by

25  ERISA.  Hastings contends that under 29 U.S.C. § 1003, ERISA does not apply to any

26  "governmental plan."

27      Hastings also asserts that there is no evidence that when plaintiff's position was

28  selected for elimination (and plaintiff was terminated pursuant to the RIF), anyone involved

15

United States District Court
For the Northern District of California

1   in the decision had the specific intent to interfere with her rights under Hastings' benefit

2   plan – a requirement to maintain a claim under ERISA § 510 – or ever considered her

3   retirement benefit status.  Hastings contends that under the McDonnell-Douglas shifting

4   burdens analysis, which applies to § 510 claims, see Ritter v. Hughes Aircraft Co., 58 F.3d

5   454, 457 (9th Cir. 1995), plaintiff cannot establish a prima facie case, and also cannot show

6   that Hastings' articulated reason for the elimination of plaintiff's position was pretextual.

7        In opposition, plaintiff argues, first, that because Hastings' "status under ERISA" has

8   not yet been considered by any court, summary judgment cannot be granted.  She claims

9   that in order to determine whether the UCRP is a governmental plan to which ERISA does

10  not apply, the court must "review each provision of Hastings' organizational and

11  administrative structure" so as to ascertain whether Hastings' affiliation with the University

12  of California and its voluntary participation in UCRP has transformed it into a "state agency"

13  under the California Constitution.

14       Second, plaintiff contends that genuine issues of material fact remain in connection

15  with the ERISA claim.  She notes that a plaintiff may establish a prima facie case in a

16  § 510 claim by showing that she participates in a statutorily protected activity, that she was

17  subjected to an adverse action, and that a causal connection exists between the two.

18  Here, plaintiff asserts, the "statutorily protected activity" was her participation in the ERISA

19  plan; and the adverse action was her termination.

20       As for the "causal connection," plaintiff asserts that Hastings earned savings in

21  "benefit expenses" as a result of her termination, which she submits is sufficient to create

22  an inference of discrimination. She points to a Hastings document in which "service credits"

23  were identified in a list of persons who were selected for termination, and claims that this

24  establishes the motive for her termination was to save Hastings money.  In addition, she

25  notes that Hastings' share (employer contributions) of her pension funding was set to

26  increase from 5% to 7% in July 2012, and from 7% to 10% in July 2013.  She argues that

27  this shows that Hastings was facing "new multi-million dollar liabilities in its employer

28  contributions, and would face even higher contributions in years to come," and provides

United States District Court
For the Northern District of California

1   substantial evidence of causation.

2        The court finds that the motion must be GRANTED.  ERISA does not govern

3   employee benefit plans established or maintained by a governmental entity.  29 U.S.C.

4   § 1003(b)(1); see also 29 U.S.C. § 1002(32) (defining "governmental plan" as "a plan

5   established or maintained for its employees by the Government of the United States, by the

6   government of any State or political subdivision thereof, or by any agency or instrumentality

7   of any of the foregoing").

8        The evidence shows that as a term and condition of her employment, Hastings

9   enrolled plaintiff in the UCRP.  The UCRP covers only employees at the University of

10  California, including at Hastings, as set forth in the Plan document.

11       Plaintiff claims that the question whether Hastings is a governmental entity involves

12  factual disputes.  It is true that "[t]he existence of an ERISA plan is a question of fact, to be

13  answered in light of all the surrounding facts and circumstances from the point of view of a

14  reasonable person." Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir. 1988).

15  Here, however, the dispute is not whether there is or is not an employee benefit plan, but

16  rather whether the UCRP qualifies as a "governmental plan" offered to its employees by a

17  governmental entity.

18       Hastings is undisputedly part of the University of California.  See Cal. Educ. Code

19  § 92201 (Hastings is "affiliated with the University of California, and is the law department

20  thereof"); Cal. Gov't Code § 3560(c) ("[t]he people of the State of California have

21  established a system of higher education under the Constitution of the State of California

22  . . . [and i]n so doing, the people have caused to be created the regents to govern the

23  University of California, a board of directors to govern Hastings College of the Law, an

24  affiliate of the University of California, and a board of trustees to govern the California State

25  University").

26       Numerous court decisions have recognized that Hastings is part of the University of

27  California, which is a governmental entity.  See, e.g., Christian Legal Soc. Chapter of the

28  Univ. of Cal., Hastings Coll. of the Law v. Martinez, 130 S.Ct. 2971, 2978 (2010) ("Hastings

United States District Court
For the Northern District of California

1   was the first law school in the University of California public-school system"); Perez v.

2   Hastings Coll. of the Law, 45 Cal. App. 4th 453, 455 (1996) (Hastings "is a public law

3   school affiliated with the University of California"); Tafoya v. Hastings College, 191 Cal.

4   App. 3d 437, 441-42 (1987) (University of California was created by statute in 1868, with

5   control over the University invested in the Regents, who were authorized to "affiliate with

6   the University and make an integral part of same" any incorporated college of law.

7   Hastings, founded in 1878, "is affiliated with the University of California, and is the law

8   department thereof.").

9        The evidence presented by Hastings (which is not disputed by plaintiff) is that the

10  pension plan was established and is administered by the University of California.  Plaintiff

11  cannot reasonably dispute that Hastings is not an "agency or instrumentality of" the State of

12  California.  Thus, the court finds that summary judgment can be granted as to the ERISA

13  claim on that basis alone.

14       As for the merits of the ERISA § 510 claim, the question is whether plaintiff has

15  submitted sufficient evidence of discrimination – either direct or circumstantial – to show a

16  genuine issue of material fact that precludes summary judgment.  Where a plaintiff alleges

17  discriminatory interference with her exercise of protected rights under § 510, the plaintiff

18  must "put forth sufficient evidence to establish [the defendant's] 'specific intent to interfere

19  with [her] benefit rights.'"  Lessard v. Applied Risk Management, 307 F.3d 1020, 1025 (9th

20  Cir. 2002) (quoting Ritter, 58 F.3d at 457).  A plaintiff may do so by presenting direct proof

21  of discrimination, or in the absence of direct proof, circumstantial evidence of discrimination

22  using the McDonnell Douglas burden-shifting framework applied in Title VII and ADEA

23  claims.  Id.  Plaintiff has not put forward any direct evidence showing that Hastings

24  discharged her with the specific intent to interfere with her right to obtain a larger pension

25  cash-out (which she alleges she would have been entitled to if she had been employed until

26  August 2012).

27       Nor has plaintiff provided evidence sufficient to establish a prima facie case of

28  intentional interference with pension rights.  To establish a prima facie case under § 510,

United States District Court

For the Northern District of California

1 plaintiff must show (1) that she engaged in a statutorily protected activity, (2) that an

2 adverse employment action was taken against her, and (3) that a causal connection

3 existed between the two.  Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 881 (9th

4 Cir.1989); see also Karamsetty v. Wells Fargo & Co., __ F.Supp. 2d __, 2013 WL 4482708

5 at *18 (N.D. Cal. Aug. 19, 2013).

6      Here, plaintiff was a participant in the pension plan, and Hastings eliminated her

7 position, which resulted in her termination (arguably an adverse action).  However, apart

8 from her own speculation, she has provided no evidence of any causal connection between

9 the adverse employment action and the likelihood that she would receive future pension

10 benefits.

11      In Dister v. Continental Group, Inc., 859 F.2d 1108 (2nd Cir. 1988) (which was cited

12 by the Ninth Circuit in Ritter), the Second Circuit found that the termination of an employee

13 four months prior to the vesting of his pension rights, and the savings to the employer

14 brought about by that termination, were sufficient to create an inference of discrimination

15 under § 510.  Id. at 1115.

16      Here, however, plaintiff has not demonstrated any connection between her employer

17 (Hastings) and the act that allegedly constituted interference with pension benefits (the

18 termination several months before a scheduled increase in the cash-out value of her

19 pension).  First, it is not Hastings that saved money by the alleged reduction in pension

20 benefits, but rather the UC System that administers and funds the pension system.  There

21 is no showing that the future pension payments will come out of Hastings' budget, as

22 opposed to out of a pension fund controlled by UC.  Moreover, this is not a question of a

23 layoff that occurred shortly before plaintiff was to become vested in the pension system.

24 She was already vested and as she herself concedes, would have been entitled to a cash-

25 out at the time of her termination – just not as large a cash-out.

26      A claim that longer employment would have yielded the plaintiff a greater pension is

27 insufficient to support an ERISA § 510 claim.  See Dytrt v. Mountain State Tel. & Tel. Co.,

28 921 F.2d 889, 896 (9th Cir. 1990) (no action lies where the alleged loss of rights is a mere

United States District Court

For the Northern District of California

1   consequence, as opposed to a motivating factor behind the termination); see also Kimbro,

2   889 F.2d at 881 (plaintiff must show employer terminated him with "specific intent" to

3   interfere with pension rights); Johnson v. United Airlines, Inc., 680 F.Supp. 1425, 1433 (D.

4   Haw. 1987) (fact that employee's discharge results in his receiving a smaller pension is

5   merely an incidental result and does not constitute evidence of intent); Baker v. Kaiser

6   Aluminum and Chem. Corp., 608 F.Supp. 1315, 1318-19 (N.D. Cal. 1984) (summary

7   judgment for employer where "[t]he only evidence offered by plaintiff is that if he had not

8   been terminated, he would have been able to accrue additional benefits").

9       In any event, even assuming for the sake of argument that plaintiff can establish a

10   prima facie case under § 510, the court finds that summary judgment must be granted

11   because Hastings has articulated a nondiscriminatory reason for the layoffs, and plaintiff

12   has not met her burden of showing that Hastings' articulated reason was pretextual.

13      Plaintiff has offered no facts or law to dispute Hastings' showing that the decision to

14   select the position of Financial Aid Assistant for elimination was not motivated by a "specific

15   intent" to interfere with plaintiff's retirement benefits.  With regard to plaintiff's argument

16   regarding Hastings' contributions to the pension funds, this mandated employer contribution

17   rate applies to all UC employees covered by the pension plan, and plaintiff has not shown

18   that any connection between Hastings' elimination of the Financial Aid Assistant position

19   and some consideration of the amount of employer contributions.

20      Moreover, the evidence submitted by Hastings in support of its original motion

21   regarding the circumstances underlying the elimination of the Financial Aid Assistant

22   position shows that Dean Marshall's decision was that the Financial Aid Assistant position

23   was not as essential as the higher-level positions in the Department, and was therefore

24   included in the college-wide RIF for operational reasons.

25                              **CONCLUSION**

26      In  accordance with the foregoing, Hastings' motion for summary judgment is

27   GRANTED.  Because this order disposes of all plaintiff's claims against Hastings, the court

28   DENIES plaintiff's motion as moot.

1

This order terminates all pending motions.  The clerk shall close the file.

2

3   **IT IS SO ORDERED.**

4   Dated:  March 13, 2014

5   _____
    PHYLLIS J. HAMILTON
6   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California